**Claudia MacLACHLAN and the Pulitzer Publishing Company, Plaintiffs-Appellants,**

v.

**Gene McNARY, et al., Defendants-Respondents.**

**No. 48430.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 11, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 22, 1985.

Application to Transfer Denied Feb. 26, 1985.

Robert B. Hoemeke, Joseph E. Martineau, St. Louis, for plaintiffs-appellants.

Thomas W. Wehrle, Clayton, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

This is an appeal from a judgment against appellants, Claudia MacLachlan and the Pulitzer Publishing Company, on their Petition for Permanent Injunction brought pursuant to Chapter 610 of the Missouri Revised Statutes. Appellants sought to enjoin respondents, who collectively form the Annexation Study Commission, from holding meetings that are closed to the public. We reverse.

Appellants in this action are the Pulitzer Publishing Company, publisher of the St. Louis Post-Dispatch, and Claudia MacLachlan, a reporter for the Post-Dispatch. Respondents are the twelve members of the Annexation Study Commission (Commission).[1]

1. The Commission was intended to have thirteen members. However, at the time of this

On January 28, 1984, St. Louis County Executive, Gene McNary, established the Commission. This Commission was created to examine the effects of annexations on county government and to make recommendations or proposals to deal with annexations. The recommendations and proposals were non-binding. A support staff from the County Planning Department was supplied to the Commission.

On February 1, 1984, the Commission first met. Nine members were present. Chairman, F. William Human, Jr., indicated that the first order of business would be to decide whether the meetings would be opened or closed to the public. County Counselor, Thomas Wehrle, supplied the Commission with a report that indicated the Commission did not fall within the dictates of Chapter 610 often referred to as the "Sunshine Law."

After a short discussion, the Commission voted seven to two to close the meeting. The public was asked to leave the room. At this point MacLachlan objected to the closure of the meeting indicating the closure would violate the Sunshine Law of Missouri. After voicing her objection, MacLachlan left the room.

On February 6, 1984, appellants filed their petition for Permanent Injunction and an application for a Temporary Restraining Order. On February 7, Circuit Court Judge Robert G.J. Hoester issued a temporary restraining order enjoining the Commission from conducting closed meetings.

On February 14, 1984, Wehrle entered his appearance as attorney for all respondents and filed their answer to the petition. After a hearing in which evidence was presented, Judge Hoester issued his February 17, 1984 order dissolving the temporary restraining order and entering judgment in favor of respondents holding that they were not a "public governmental body" subject to the Sunshine Law. On March 9, 1984, appellants filed their notice of appeal.

In the case at bar, the sole issue on appeal is whether the Commission is a "public governmental body" under Sections 610.010 to 610.030 RSMo Supp.1982 and as such whether its meetings are "public meetings" subject to said sections.

Public meeting is defined as:

any meeting of a governmental body subject to this act at which public business is discussed, decided, or public policy formulated, but shall not include an informal gathering of members of a governmental body for ministerial or social purposes when there is no intent to avoid the purposes of this chapter.

Public governmental body is defined as:

1. Any legislative or administrative governmental entity created by the constitution or statute of this state, by order or ordinance of any political subdivision or district, or by executive order including any body, agency, board, bureau, counsel, commission, committee, department, or division of the state, of any county or of any municipal government, school district or special purpose district;

2. Any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power;

3. Any committee appointed by or under the direction or authority of any of the above-named entities and which is authorized to report to any of the above-named entities; and

4. Any quasi-public governmental body.

There is no evidence which shows the Commission has legislative or administrative powers. Thus, the first category of the definition is not applicable. Similarly, the second category does not apply. The Commission is not a quasi-public governmental body, and therefore, the fourth category of the definition is not applicable.

action, it was comprised of only twelve members. The members are: Gene McNary, Emmett A. Capstick, Ed Chard III, Ellen R. Conant, Harold Dielmann, James J. Egan, Paul E. Hill, F. William Human, Jr., Ollie Langhorst, H. C. Milford, Harry E. Von Romer and Roger C. Zimmerman.

Our review deals entirely with the third category.

Appellants urge this court to find the Commission is a type three public governmental body. To arrive at this conclusion, appellants argue that County Executive, Gene McNary, is an "administrative government entity" and as such is one of the "above named entities" as these terms are used in Section 610.010(2). The circuit court in its opinion properly concluded that the Commission was appointed by an "Executive Entity."

■ Respondents assert that McNary cannot be a public governmental body because he is a body of one. Black's Law Dictionary defines entity as including a "person" or "governmental unit." While a single member body cannot have meetings, it can have records. One aspect of the Sunshine Law is that public records be open. Thus, it is not inconsistent to hold a single member body as a governmental entity. The trial court did not err in holding McNary as such.

We next focus our attention to the third category, "any committee appointed by or under the direction or authority of any of the above-named entities and which is authorized to report to any of the above-named entities."

■ The courts of this state have been called upon on frequent occasions to interpret the legislative intent underlying Chapter 610. This law reflects Missouri's commitment to openness in government. It is beyond doubt that the Statute is to be construed liberally in favor of open government. It is the public policy of this State that public commissions exist to aid in the conduct of the people's business. It is the intent of Chapter 610 that their actions be taken openly and that their deliberations be conducted openly.

■ However, respondents contend that the Commission is not subject to the Sunshine Law because they have no authority to conduct public business or perform any governmental function and possess no power to bind the county executive or the county council. In support of this argument, respondents cite *Tribune Publishing Company v. The Curators of the University of Missouri*, 661 S.W.2d 575 (Mo.App.1983). The trial court agreed with respondents stating "that the General Assembly intended that those entities which have the power *to decide* or *to formulate public policy* were entities to be open to the sunshine of the press." We disagree with this contention.

In *Tribune*, the Missouri Court of Appeals, Western District, was faced with the task of interpreting an earlier definition of a "public governmental body." [2] Public governmental body was defined then as:

Any constitutional or statutory governmental entity, including any state body, agency, board, bureau, commission, committee, department, division or any political subdivision of the state, of any county or of any municipal government, school district or special purpose district, and any other governmental deliberative body under the direction of three or more elected or appointed members having rulemaking or quasi-judicial power.

The court in *Tribune* was asked to declare that meetings of the Curators of the University of Missouri at which any public business was discussed or decided, or public policy was formulated, be declared public meetings of a public governmental body. In addition the Court was asked to declare that certain internal audit reports, a hospital task force report, and a medical library feasibility study be declared public records of a public governmental body. The injunctive relief sought to enjoin the defendants from holding certain closed meetings and enjoining their refusal to make the internal audit reports, hospital task force report, and medical library feasibility study available to the public. The resolution of this case hinged on whether the Curators of the University of Missouri and the entities preparing the various reports were public governmental bodies.

**2.** Section 610.010 et seq., RSMo Supp.1975 as amended RSMo Supp.1977.

To determine which entities were public governmental bodies the court looked to the previously quoted definition and reasoned:

> By its very nature, the quintessence of a "public governmental body" is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, or the exercise of quasi-judicial power. It defies semantics to believe that the legislature intended inclusion of bodies or entities barren of the power to govern in the definition of "public governmental body." If such were intended, a simple stroke of the pen striking the adjective "governmental" would have made it a fait accompli. *Id.* at 584.

The *Tribune* case ultimately held that the Curators of the University of Missouri, individually, were not a public governmental body and that the internal audit reports, the hospital task force report and the medical library feasibility study were not public records of a public governmental body. The Board of Curators, a nine member board that governs the University of Missouri, was held to be a public governmental body.

The internal audit reports, the hospital task force report, and the medical library feasibility study were each found not to be public records of a public governmental body because they were not prepared by persons or entities with the de jure or de facto authority of the Board of Curators to make policy decisions for the Board or to issue rules or regulations to implement the reports or study. Also the report and the study were not given to the Board of Curators so as to make them the reports of the Board of Curators, a public governmental body.

In summation, the court wrote:

> Although different courts must construe different statutory provisions, it appears that the majority of other jurisdictions have generally held that ad hoc committees or citizen advisory committees, empaneled for the purpose of furnishing information and recommendations to governing or decision making entities, are not subject to the open meetings laws unless they have actual or defacto decision making authority. *Id.* at 587.

However, *Tribune* is distinguishable. The amendments to Chapter 610 in 1978 and 1982 resulted in an independent clause pertaining to committees. This clause is devoid of any requirement that the committee have the power to govern or the power to formulate public policy. Our Brothers in the Western District were not required in *Tribune* to consider the applicability of this amended definition.

As stated previously, the intent behind the enactment of the Sunshine Law was the performance of public business in an open and public manner, with the public able to attend and listen to the deliberations and decisions that go into the making of public policy. By enactment of the 1982 amendment to Chapter 610, it is apparent that the Legislature intended to affect the entire administrative decision-making process, not just the formal act of voting for the formal execution of an official document. It is unnecessary that an entity have binding authority for it to be subject to the Sunshine Law. It is within the meaning of the law if its determinations affect the public.

The Commission at bar affects the public. McNary's written press release intimated the Commission would "recommend changes in the County's makeup and delivery of governmental services." Further, various municipal officials of the county agreed to withdraw the proposals for annexations pending the outcome of a nine-month study on the restructuring of county government.

■ Respondents next argue that the Commission is not subject to Chapter 610 because it has no duty to report its findings. This argument ignores the third category of the definition of public governmental body. A committee subject to the Sunshine Law need only be "authorized" or empowered to report. To hold otherwise would circumvent the purpose of the law. A committee will not be excused from the ambit of the Sunshine Law because it fails

to disclose its intention of making a report or recommendation.

■ Lastly, respondents contend that the Commission is not a legally constituted body because it was not created in accordance with the provisions of the Charter of St. Louis County. As such, respondents argue that the Commission is best described as a private "think tank." We disagree.

McNary announced the creation of the Annexation Study Commission at a press conference which took place in the ninth floor board room of the County Government Center. He described in his own press release that this was "the most important commission ... appointed in [his] 18 years in public office...." This commission was charged with considering and recommending "changes in the County's makeup and delivery of governmental services." This is hardly a "think tank."

In addition the Commission utilizes county offices and is assisted by county personnel. Thomas Wehrle, County Counselor, personally represented the Commission in this cause of action. This legal representation is in direct contrast to the proposition that the Commission is a non-governmental private organization. Section 5.010 of the County Charter mandates that the county counselor "shall devote all of his time to the duties of his office and shall not engage in the private practice of law." To hold the Commission as a private entity, unassociated with the county, would result in Wehrle being in direct violation of Section 5.010. Additionally, section 3.050(8) specifically grants McNary the authority to "[p]romote and encourage cooperative relationships between the county and the political subdivisions within the county in matters relating to land use planning." We conclude that the Commission is a legally constituted body created in accordance with the provisions of the Charter of Saint Louis County.

Recognizing that the Commission is a legally constituted committee serving the public, it follows that the meetings are public meetings under the Sunshine Law. This is because such meetings are meetings of a public governmental body at which "public business is discussed." Section 610.010(3).

■ Public meetings of public governmental bodies must be open to the public except in limited circumstances. Section 610.025. Where a public governmental body intends to hold closed public meetings in contravention of Chapter 610, the circuit court where the governmental body has its principal place of business has jurisdiction to enjoin such violations. In the case at bar, the circuit court erred in denying appellants' petition for injunctive relief. Therefore, the order of the circuit court is reversed and this cause is remanded with instructions to the circuit court to issue its injunction permanently enjoining the members of the Annexation Study Commission from holding public meetings closed to the public unless specifically authorized and in compliance with Chapter 610 RSMo.

Judgment reversed and remanded.

GAERTNER and KAROHL, JJ., concur.