Honorable H. Morley Swingle Prosecuting Attorney of Cape Girardeau County Cape Girardeau County Courthouse 100 Court Street Jackson, MO 63755
Dear Mr. Swingle:
You have requested an opinion on whether the provisions of Chapter 610, RSMo 2000,[1] or Missouri's Sunshine Law, apply to an advisory task force appointed by a school district superintendent. More specifically, you have posed the following question:
 Whether a task force formed by a superintendent is a public governmental body for the purposes of the Sunshine Law of Missouri so that any meeting held by the task force is subject to Missouri's Sunshine Law.
We understand that this question arises out of facts in which the superintendent of the Cape Girardeau Public School District appointed a task force to recommend possible budget cuts. The task force then reported its findings to the superintendent.
The Sunshine Law expresses the public policy of this state that meetings, records, votes, actions, and deliberations of "public governmental bodies" are open to the public. See Section 610.011. Section 610.010(4) defines the term "public governmental body" as:
 [A]ny legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order, including:
. . . .
 (e) Any committee appointed by or at the direction of any of the entities and which is authorized to report to any of the above-named entities, any advisory committee appointed by or at the direction of any of the named entities for the specific purpose of recommending, directly to the public governmental body's governing board or its chief administrative officer, policy or policy revisions or expenditures of public funds . . . .
In interpreting statutes, we look first to the plain and ordinary meaning of the words enacted by the General Assembly.Cox v. Dir. Of Revenue, 98 S.W.3d 548, 550 (Mo.banc 2003). In addition, when interpreting the Sunshine Law, we are required to construe its provisions broadly to favor our state's public policy of openness. Section 610.011.1.
Applying the statute and case law to these specific facts, we conclude that the advisory budgetary task force appointed by the school superintendent was a public governmental body under Section 610.010(4)(e). The superintendent in this instance was himself a public governmental body, who in turn appointed a second public governmental body, an advisory committee, for the purpose of making expenditure recommendations.
Section 610.010(4)(e) identifies several types of committees that constitute public governmental bodies. We believe the second definition contained in that subdivision is particularly applicable here. The pertinent language identifies as a public governmental body: "any advisory committee appointed by or at the direction of any of the named entities for the specific purpose of recommending, directly to the public governmental body's governing board or its chief administrative officer, policy or policy revisions or expenditures of public funds. . . ."
The task force at issue here meets the elements of this definition. As an initial matter, the superintendent's task force was an "advisory committee," regardless of the label used to describe it. Its organization and purpose earmark it as a "committee," which, in the term's ordinary meaning, signifies "a body of persons delegated to consider, investigate, or take action upon and usually to report concerning some matter or business." Webster's Third New International Dictionary 2372 (7th ed. 1993). It was formed for the purpose of advising the superintendent and indeed has provided such advice.
Further, the task force was "appointed by or at the direction" of one of the named public governmental body entities listed at the beginning of Section 610.010(4). The school district superintendent is a named entity for purposes of Section 610.010(4), because the superintendent is an "administrative . . . entity created by order or ordinance of any political subdivision or district." Section 610.010(4).
Specifically, the position of superintendent is an administrative entity created by order of the Cape Girardeau School District. Section 168.201 permits school districts such as Cape Girardeau to hire a superintendent. Pursuant to that authority, the Cape Girardeau School District has created the position of superintendent and identified its responsibilities through orders that are codified in the Cape Girardeau School District Policy Manual, a relevant portion of which is attached to this opinion. Specifically, the Policy Manual authorizes the position of school superintendent and provides that the position shall be the "chief executive officer of the Board of Education and the administrative head of all divisions and departments of the Cape Girardeau School District," among other things. This represents an "order" of the School District as that term is commonly understood. See Webster's Third New International Dictionary 1588 (7th ed. 1993) ("a rule or regulation used by a competent authority"). The terms of the School District's order identify the superintendent as an "administrative" entity and, indeed, the responsibilities and duties assigned to the superintendent by the order are those of an administrative entity. Thus, the superintendent of schools is a public governmental body as contemplated by Section 610.010(4).
This conclusion is not altered by the fact that the superintendent is a single official. MacLachlan v. McNary,684 S.W.2d 534, 537 (Mo.App.E.D. 1984). Indeed, the circumstances addressed in your opinion request are similar to those addressed by the Court of Appeals in MacLachlan. In that case, the St. Louis County Executive established an annexation study commission and the Court considered whether that commission was a public governmental body on the grounds that it was a committee appointed by another public governmental body. 684 S.W.2d at 536-37. The Court rejected arguments that the St. Louis County Executive alone could not constitute a public governmental body. Id. at 537. The court stated:
 Black's Law Dictionary defines entity as including a "person" or "governmental unit." While a single member body cannot have meetings, it can have records. One aspect of the Sunshine Law is that public records be open. Thus, it is not inconsistent to hold a single member body as a governmental entity.
Id. The definition of "public governmental body" largely hinges on whether the body, or individual, has either the power to govern or acts as an administrative decision-maker with determinations affecting the public. Colombo v. Buford, 935 S.W.2d 690, 698
(Mo.App.W.D. 1996); Tipton v. Barton, 747 S.W.2d 325, 329
(Mo.App.E.D. 1988). As a public governmental body, a superintendent is capable of creating other public governmental bodies under Section 610.010(4)(e) in the form of committees or advisory committees.
Finally, the task force in this instance was appointed specifically for the purpose of making recommendations for expenditures of public funds to a public governmental body's chief administrative officer. This reporting requirement meets the last element set out in Section 610.010(4)(e) for the definition of public governmental entity advisory committees. Here, the superintendent specifically charged the task force with the duty of making budgetary proposals, which were reported to him when completed. Such budgetary proposals necessarily involve recommendations on the expenditures of public funds. In addition, the language of the School District's orders contained in the Policy Manual and the nature of the responsibilities assigned to the superintendent illustrate that he is the School District's chief administrative officer.
CONCLUSION
A task force appointed by the Cape Girardeau School District's superintendent for the purpose of making budget proposals to the superintendent was a public governmental body within the meaning of the Sunshine Law so that meetings of the task force were subject to the requirements of the Sunshine Law.
Sincerely,
JEREMIAH W. (JAY) NIXON
Attorney General
attachment
[1] All references are to RSMo 2000 unless otherwise specified.