Traci BAUER, Plaintiff,

v.

Paul K. KINCAID, et al., Defendants.

No. 90–3027–CV–S–4.

United States District Court,
W.D. Missouri, S.D.

March 13, 1991.

Addendum March 14, 1991.

Douglas W. Greene, Springfield, Mo., and Daniel J. Dodson, Roger G. Brown and Associates, Jefferson City, Mo., for plaintiff.

John F. Black, Ellis, King, Ellis & Black, Springfield, Mo., for defendants.

## ORDER

RUSSELL G. CLARK, District Judge.

### Jurisdiction

Plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1331 in that Counts I and II are filed under 42 U.S.C. § 1983, Count IV seeks a declaratory judgment based on a federal statute and jurisdiction of additional counts is pursuant to pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

### Findings of Fact

1.  Plaintiff is an adult, being over the age of eighteen years, is a citizen of the United States, and of the State of Missouri, is a student at Southwest Missouri State University, hereinafter referred to as "SMSU," and is the editor in-chief of the Southwest Standard, a student newspaper at SMSU.

2.  Defendant Kincaid is the Director of University Relations at SMSU.

3.  Defendant Batchelder is the Director of the Safety and Security Department at SMSU.

4.  Defendant Gordon is the President of SMSU.

5.  Defendant Patton is Vice President for Administrative Services at SMSU.

6.  Defendant Lunday is Vice President for Student Affairs at SMSU.

7.  Defendants Pinegar, Miller, Cantwell, Ferguson, Fowler, and Hall are members of the Board of Regents at SMSU, and, as Board of Regents, are vested with the general control and management of the University.

8.  Defendant Maurice E. Edwards is no longer Custodian of Records of SMSU, and Marilyn M. Dennis is now Custodian of Records.

9.  Southwest Missouri State University is a public educational institution located in Springfield, Missouri, and as such, receives funds from, among other sources, the State of Missouri and the United States Government for education and related purposes.

10.  Crimes have occurred, and in the future are likely to occur on the campus of SMSU, which have involved, and will in the future involve, SMSU students as victims or suspects of criminal activity. Defendants have recognized the importance of and have the intent to promptly forward to the proper law enforcement authorities reports of all actual or suspected criminal activity occurring on campus that has been brought to the attention of defendants or their agents, so that criminal activity may be promptly and properly investigated by law enforcement authorities.

11. The SMSU Safety and Security Department has no curricular educational function, and is not a commissioned law enforcement agency.

12. The SMSU Safety and Security Department performs functions that include the search of students rooms, the investigation of suspected criminal activity on campus by students and non-students, and the preparation of criminal investigation reports, which the department and the university denote as "incident" reports.

13. The "incident" reports made by employees of the SMSU Safety and Security Department are reports of investigations by such department of suspected or reported crimes, including sexual assault, robbery, criminal assault, burglary, stealing and other crimes allegedly committed by students and non-students on the SMSU campus.

14. As a part of its function, the SMSU Safety and Security Department makes, keeps, and maintains the "incident" reports, and other reports concerning crimes occurring on campus. In most of those reports, students are alleged victims or suspects. In some they are not.

15. Plaintiff has in her possession, or may obtain in the future, verbatim copies of criminal investigation reports prepared by the SMSU Safety and Security Department which were obtained in the past or may be obtained in the future by plaintiff from collateral sources, which reports may contain the names and addresses of student victims or suspects.

16. The SMSU Safety and Security Department is a functioning arm of SMSU, subject to the general control and policy of the SMSU Board of Regents, and the defendants Batchelder, Lunday, Patton, and Gordon.

17. On July 31, 1989, defendant Kincaid distributed a policy regarding release of Security Office records which include the "incident" reports, under which policy verbatim copies of such reports are withheld from the public and the media by the defendants; and that plaintiff, in her capacity as a student, a journalist and a citizen, has requested of defendants that they allow her to inspect and copy such reports, and that defendants have refused her request.

18. Police authority and jurisdiction over the SMSU campus and persons on campus lies with the Springfield, Missouri, Police Department.

19. A number of SMSU student victims of alleged crime do not make their initial complaint as crime victims to the Springfield Police Department or the Greene County Sheriff's office, but make such complaints to the SMSU Safety and Security Department.

20. The Director of the SMSU Safety and Security Department directs his security officers when investigating alleged criminal activity to advise students and provide them written notice that the Security Department is not a commissioned law enforcement office, and to encourage the students to report the matter with the Springfield Police Department.

21. Plaintiff claims that because of the delay of filing of the "incident" reports with the Springfield Police Department, or, in some cases, not filing such reports with the Springfield Police Department, the police are unable to promptly investigate on-campus crime, which deprives plaintiff of the quality of police protection she would receive if she were a non-student living off campus. Further, plaintiff claims that she is entitled to the "incident" reports in question, and all other criminal investigations reports prepared by the SMSU Safety and Security Department, by reason of the provisions of Mo.Rev.Stat. Chapter 610 claiming that SMSU is a "public governmental body" and the criminal investigation reports in question, including the "incident" reports, are not classified as closed records by § 610.025 or any other provision of Chapter 610 and further claiming that for such reason she is entitled to inspect and copy such records.

22. Defendants claim that the provisions of 20 U.S.C. § 1232g, *et seq.*, and/or Mo.Rev.Stat. Chapter 610 prohibit and prevent SMSU from releasing to plaintiff, any member of the public, or any member of the press, verbatim copies of the "incident"

reports, or any other type of criminal investigation report or summary that contains the name of any SMSU student.

23. The Family Educational and Rights of Privacy Act ("FERPA"), 20 U.S.C. § 1232g(a)(4)(A) defines "Education records," with certain exceptions, as those records, files, documents, and other materials which contain information directly related to a student, and which are maintained by an educational agency or institution or by a person acting for such agency or institution.

24. 20 U.S.C. § 1232g was enacted by Congress to protect the privacy of students and their parents by limiting access to student educational records maintained by an educational institution.

25. It is the policy of SMSU that personnel of the Safety and Security Office do not have access to Education Records as defined in Paragraph 23.

26. It is the policy of SMSU that the records and documents of the Safety and Security Office are kept apart from Education Records described in Paragraph 23 and remain solely for law enforcement purposes, and are not made available to persons other than the Springfield Police Department.

27. On approximately a weekly basis, at the request of the student newspaper for which plaintiff is student editor, defendant Batchelder orally advises the student newspaper of alleged criminal activity occurring on the SMSU campus within the past week, but advises in such a manner to not provide the names, addresses or other personally identifiable information contained in said records regarding students at SMSU.

28. It is the policy of SMSU to make available to the Springfield Police Department, upon request of the Springfield Police Department, any and all records of the Security Office maintained separately and apart from education records, as described above in paragraph 23.

29. It is the policy of the SMSU Security Office to notify the Springfield Police Department by telephone of suspected felony criminal activity and sexual assault of any classification, to allow the Police Department to conduct its own investigation at that time if the Police Department so desires.

30. The telephone number of the SMSU Safety and Security Department is listed on some campus telephones, along with the emergency "911" telephone number to contact the Police. On some campus telephones, particularly those that are restricted to campus telephone numbers, the SMSU Safety and Security Department phone number is listed. The "911" number could not be accessed by those campus telephones.

31. The Board of Regents, and the individual members of the Board of Regents, are not provided and do not review the security records, including the "incident reports" requested by plaintiff. Defendant Batchelder, as Director of the Safety and Security Department, and defendant Patton, as defendant Batchelder's immediate supervisor, are the only defendants that routinely have access to the security information reports.

32. Defendant Patton, as Vice President for Administrative Services, is involved with administrative support, and is not a professional educator.

33. It is the policy of the SMSU Safety and Security Department, on a weekly basis, to provide summaries of all suspected criminal activity on the University campus to the Springfield Police Department, including the SMSU incident report number, date, time, location, building or lot number, whether or not a suspected felony, brief description of the incident, incident code according to the uniform criminal reporting code, whether or not the suspect was a student or non-student and name and address if known, the Police report number if the Springfield Police Department has made a report, and remarks.

34. Defendant Gordon, as President of the University, and defendant Lunday, as Vice President for Student Affairs, are provided on a weekly basis, summaries of suspected criminal activity on the SMSU campus, with all personally identifiable information eliminated so as to not constitute an

"education record" as described in Paragraph 23 above. The Board of Regents is not provided such summaries.

35. All SMSU Safety and Security Department incident reports are available to the Springfield Police Department for their review and copying at the request of the Springfield Police Department.

36. Plaintiff agrees that defendants could produce evidence, which plaintiff does not refute, that the incident reports in possession of the Springfield Police Department are available to plaintiff, and all members of the public, in the same fashion as all investigation records of the Springfield Police Department, under the Missouri "Sunshine Law," Mo.Rev.Stat. § 610.010 *et seq.* However, plaintiff does not concede that such disclosures that the Springfield Police Department may make of their files and records is relevant to this cause, and does not concede that all non-disclosures by the Springfield Police Department have a legal basis under Chapter 610.

37. Plaintiff agrees that defendants could produce evidence, which plaintiff does not refute, that the procedures in effect between the SMSU Safety and Security Department and the Springfield Police Department are working quite well, and the City has access to all the information it needs from SMSU under the current system, according to the Chief of Police of the Springfield Police Department, but plaintiff does not concede that such evidence is relevant to this cause.

38. Plaintiff agrees that defendants could produce evidence, which plaintiff does not refute, that the Springfield Police Department has established a policy to review criminal investigation records before it allows the public access to the records in order to be sure that the City has not violated a person's right of privacy, but plaintiff does not concede that such evidence is relevant to this cause.

39. Plaintiff agrees that defendants could produce evidence, which plaintiff does not refute, that the City of Springfield, through its officials, has expressed concern that release of incident reports and other security information available to the Police Department to the public, generally, including plaintiff, could interfere with ongoing investigations of the Police Department, even if information which could personally identify individuals has been removed prior to disclosure to the public, but plaintiff does not concede that such evidence is relevant to this cause.

40. Plaintiff agrees that defendants could produce evidence, which plaintiff does not refute, that, as a result of the concerns stated in the preceding paragraph, the City of Springfield, through its officials, takes the position that "incident reports" and other security information provided to the Police Department should be available to the public only at the Police Department, under the Missouri Sunshine Law, absent mechanisms to prevent possible interference with the City's law enforcement investigation efforts, but plaintiff does not concede that such evidence is relevant to this cause, as such matters are not properly before this Court.

41. Defendants, on August 29, 1990, filed in this cause a Motion for a Protective Order to prohibit plaintiff and plaintiff's counsel from publishing "any confidential records directly related to a student of Southwest Missouri State University without the written consent of the student in issue, except as required or authorized by this Court." The motion is directed toward the pretrial suppression of criminal investigation reports prepared by the SMSU Safety and Security Department that plaintiff and her counsel have in their possession, which they obtained from collateral sources.

42. The policies of SMSU referred to in Paragraphs 17, 25, 26, 28, 29 and 33 of defendants' proposed stipulation of facts are subject to the general control and management of the named defendants who are members of the Board of Regents, and such policies may be changed or abandoned at any time by the defendants without notice to plaintiff or the general public.

On February 19–22, 1991 this Court held a hearing on five additional factual allegations.

1. Concerning the factual allegation regarding whether or not the release of incident reports to plaintiff could interfere with ongoing investigations of the Springfield Police Department, the Court finds that there was credible testimony by Springfield Police Chief Terry Knowles that release of the reports could interfere with ongoing police investigations because the Springfield Police Department would continue to follow its departmental policy in determining what information to release, whereas the release of information contained in the Safety and Security Department criminal investigation and incident reports would only be restricted by the Missouri Sunshine Law.

2. Concerning the factual allegation that defendants have a history of concealing incidents of crime occurring on campus there was credible testimony that, in the past, SMSU has concealed or destroyed evidence of contraband and failed or refused to release selected criminal investigation and incident reports concerning sex offenses, student athletes and university personnel.

3. Concerning the factual allegation regarding release of information and reports by other universities and allegations that in no case have federal funds been withheld as a result of disclosure of the type of reports in question, there was credible testimony from Mark Goodman, president of the Student Press Law Center, that no federal funds have actually been withheld as a result of disclosure. However, the Department of Education has issued warnings to some schools. All schools which have been issued warnings have voluntarily fallen into compliance with the Department of Education's interpretation of FERPA.

4. Concerning the factual allegation that, at the University of Washington, crime on campus dropped after investigation reports were made public, there was credible evidence that these statistics were accurate but Mike Shanahan, Police Chief at the University of Washington, also testified that there was no significant correlation between reporting campus crime and the crime rate because other factors were more likely to contribute to the drop in crime.

5. Concerning the factual allegation regarding a meeting between Springfield Police Department officials and University officials and the allegation that since February 1988, nothing has happened to change defendants' attitude regarding reporting of crime, there was credible evidence that in the recent past SMSU has made great strides in updating its communication with the Springfield Police Department, including reporting felonies by telephone, daily computer link transmittal of incident summaries, weekly intelligence summaries and general continued cooperation.

## Issues

Plaintiff's complaint contains allegations that the actions of defendants in implementing a policy regarding the release of campus security reports and information by which such reports are and continue to be withheld from the public and the media are in violation of Mo.Rev.Stat. Chapter 610, plaintiff's rights of free speech, free press and equal protection under the First and Fourteenth Amendments and serve to classify plaintiff as a student and to deny that class equal police protection.

Count I requests a temporary restraining order and permanent injunction. Plaintiff requests that the Court enter a temporary restraining order prohibiting defendants from withholding campus security reports, ordering defendants to immediately implement a policy causing the Safety and Security Department to report all criminal activity to the Springfield Police Department, order defendants to immediately implement measures to inform students of the limits of the Safety and Security Department's authority in criminal situations and enter preliminary and permanent injunctions for the same relief.

Count II alleges a violation of civil rights under 42 U.S.C. § 1983. Plaintiff asserts that the actions of defendants hinder her right of access, under the First and Fourteenth Amendments of the United States Constitution, to information which she is entitled to as a citizen, student and journal-

ist. Plaintiff argues that defendants' actions violate her equal protection rights in that they deprive her, as a student, from access to information that is accessible to the general public in like situations and deprive her of timely and efficient police protection that is provided to the general public in like situations. Plaintiff asserts that defendants' actions violate her rights under 20 U.S.C. § 1232g pursuant to which she seeks the criminal investigation and incident reports. Plaintiff claims that these alleged violations of her rights have damaged her in the amount of $5,000.

Count III alleges a violation of Mo.Rev. Stat., Chapter 610. Plaintiff maintains that defendants constitute a public governmental body within the meaning of Chapter 610 and the records being withheld are within the meaning of public records as set forth in § 610.010(4). Furthermore, plaintiff claims that said records do not fall within any exception listed in § 610.021 and that by violation of Chapter 610 defendants are subject to a civil fine of $300.00 pursuant to § 610.027.3. Plaintiff requests that this Court declare defendants in violation of Chapter 610 and assess a civil fine of $300.00, costs and attorney's fees.

Count IV requests a declaratory judgment. Plaintiff alleges that pursuant to 20 U.S.C. § 1232g, in conjunction with Chapter 610, defendants have failed to justify their refusal to release campus security reports. Plaintiff contends that such action is unlawful because the provisions of 20 U.S.C. § 1232g are not mandatory and that therefore 20 U.S.C. § 1232g is not a justification for violating the Missouri Sunshine Law.

Plaintiff submits that campus security reports fit within the exception to the definition of education records set forth in 20 U.S.C. § 1232g(a)(4)(B)(ii) and are therefore disclosable. Plaintiff asserts that Congress, in establishing 20 U.S.C. § 1232g(a)(4)(B)(ii), clearly established an intent to make at least some campus law enforcement records exempt from the provisions of 20 U.S.C. § 1232g and that the vagueness of said subsection precludes plaintiff's understanding and exercise of her rights and remedies.

Alternatively, plaintiff asserts that withholding campus security records violates her rights under the First and Fourteenth Amendments, or that 20 U.S.C. § 1232g, if used to penalize dissemination of campus security reports, unconstitutionally violates plaintiff's rights under the First and Fourteenth Amendments.

Plaintiff requests that this Court declare that the provisions of 20 U.S.C. § 1232g are not mandatory and that therefore 20 U.S.C. § 1232g cannot be applied in contravention of Missouri law, that campus criminal investigation and incident reports are not educational records and are disclosable, that Congress intended to make at least some campus law enforcement records exempt from the provisions of 20 U.S.C. § 1232g and that the vagueness of said subsection violates plaintiff's constitutional rights.

## MISSOURI SUNSHINE LAW

■ Section 610.011.2 of the Missouri Open Records Act or the "Sunshine Law" provides that all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in § 610.023 to § 610.026, except as otherwise provided by law. In interpreting this provision of law and all other provisions of Chapter 610, § 610.011 reads in pertinent part:

It is the public policy of this state that meetings, records, votes, actions and deliberations of public governmental bodies be open to the public, unless otherwise provided by law.

It is the fundamental policy of the Missouri Sunshine Law to foster openness in government. The several sections of Chapter 610 considered together, speak loudly for the general assembly that its intent in enacting the Sunshine Law was to ensure that all meetings of public governmental bodies would be open to the public and not conducted in secrecy, and also that the records of the body and the votes of the members must be open. The Sunshine Law is to be liberally construed and its

exceptions strictly construed so as to promote this public policy.

Defendants contend that the records plaintiff seeks are not subject to the Missouri Sunshine Law. Plaintiff argues that SMSU and/or the Board of Regents is a public governmental body and the SMSU Safety and Security Department is an administrative entity under the general management and control of the Board of Regents. As such, the criminal investigation and incident reports sought by plaintiff properly fall within the ambit of records of a public governmental body as that term is defined in § 610.010(2). Thus, plaintiff asserts that the criminal investigation and incident reports are records retained by a public governmental body and are therefore public records.

Section 610.010 defines "public governmental body" as:

—any legislative or administrative governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee, board of regents or board of curators of any institution of higher education, supported in whole or in part from state funds, advisory committee or commission appointed by the governor by executive order, department, or division of the state, of any political subdivision of the state, of any county or of any municipal government, school district or special purpose district,

—any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power,

—any committee appointed by or under the direction or authority of any of the above-named entities and which is authorized to report to any of the above-named entities, and

—any quasi-public governmental body.

Defendants contend that SMSU is not a public governmental body and that the criminal investigation and incident reports are not public records. Defendants rely primarily on *Tribune Publishing Co. v. Curators of the University of Missouri*, 661 S.W.2d 575 (Mo.Ct.App.1983). Defendants submit that the Sunshine Law signifies a legislative intent to disclose only records of the Board of Regents itself. Defendants conclude that statutory vesting of governing authority in the Board of Regents does not mean that lower levels in the organization, which are not vested with the power to govern, are subject to the Sunshine Law. The Court disagrees, as subsequent case law refutes defendants' position.

█ The term public governmental body includes any legislative, or administrative governmental entity created by the constitution or statutes of the State of Missouri. In *Charlier v. Corum*, 774 S.W.2d 518 (Mo.Ct.App.1989) the court held that the legislature did not intend the words "legislative, administrative" to limit the scope of governmental bodies to those governmental entities having a legislative function. The legislative intent to include any legislative entity and administrative entity in determining what constitutes a public governmental body for the purpose of the Sunshine Law makes common sense. Otherwise, any department of government could hide its records by claiming that the department or official did not have the power to govern.

Plaintiff points out that *Tribune* does not support defendants' position. Following the *Tribune* decision, the Missouri legislature, evidently as a result of displeasure with the outcome in the *Tribune* decision, twice amended § 610.010(2) and § 610.010(4) which defines public governmental body and public records. The amendments in 1982 and 1987 expanded the definition of public governmental body to include all *administrative entities* of state government as well as legislative entities.

Plaintiff asserts that cases subsequent to *Tribune*, *McLachlan v. McNary*, 684 S.W.2d 534 (Mo.Ct.App.1984), *Tipton v. Barton*, 747 S.W.2d 325 (Mo.Ct.App.1988) and *Charlier v. Corum*, 774 S.W.2d 518 (Mo.Ct.App.1989) provide guidance on how the amendments should be construed.

Plaintiff suggests that these cases support the position that the criminal investigation and incident reports requested should be disclosed pursuant to the Sunshine Law. These cases stress that any record of any public governmental body, administrative or legislative, is a public record within the meaning of the Sunshine Law.

"By enactment of the 1982 amendment ... it is apparent that the legislature intended to affect the entire administrative decision-making process, not just the formal act of voting for the formal execution of an official document. It is unnecessary that an entity have governing authority for it to be subject to the Sunshine Law. It is within the meaning of the law if its determinations affect the public." *McLachlan v. McNary*, 684 S.W.2d 534, 538 (Mo.Ct. App.1984). In the present case there can be no doubt that crime on campus and security incidents affect the general public, especially students and their parents.

*Tribune* is no longer the law in Missouri by reason of the statutory amendments of 1982 and 1987. *Tribune* is also distinguishable because the amendments resulted in an independent clause pertaining to committees. The committee clause is devoid of any requirement that the committee have the power to govern or the power to formulate public policy. In *Tribune*, the Western District of Missouri was not required to consider the applicability of this amended definition. *McLachlan*, 684 S.W.2d at 534.

Without reaching the question of whether SMSU is a public governmental body, the Court notes that there is no question but that the Board of Regents is a public governmental body. Thus, even if defendants are correct in their contention that the University itself is not a public governmental body, defendants admit that the Board of Regents is a public governmental body. The Board of Regents is vested with the general control and management of the University. Mo.Rev.Stat. § 174.120.

Defendants concede that the policies of the University are subject to the general control and management of the named defendants who are members of the Board of Regents. By necessity, University policies include the operation of the Department of Safety and Security which includes the preparation, maintenance and retention of the criminal investigation and incident reports. Since the criminal investigation and incident reports are, by statute, subject to the general control and management of the defendants who are members of the Board of Regents, the criminal investigation reports in question are records of a public governmental body.

Defendants assert that the Safety and Security Department is not a committee appointed under the direction or authority of the Board of Regents which is authorized to report to the Board of Regents. The Safety and Security Department is headed by a director who reports to the President, who is subordinate to the Board of Regents. However, defendants appear to have insulated the Board of Regents from receiving the records. Because the records become public when they are retained by a public governmental body, plaintiff suggests that defendants follow a practice of not providing such records to the Board of Regents. As a result, defendants maintain that the records cannot be considered "retained" by the Board of Regents which is a public governmental body.

The University chain of command illustrates that the Board's attempt to shield itself from the records appears to be a subterfuge to avoid the Sunshine Law. The director of Safety and Security is subordinate to the Vice–President of Administration who is subordinate to the President who is subordinate to the Board of Regents. On a weekly basis, the President receives a summary of the criminal investigation and incident reports. The purpose of the Sunshine Law would be thwarted if a public governmental body could merely create an intermediate reporting level and then authorize an administrative entity to report only at that level in order to shield sensitive information from disclosure under the Missouri Sunshine Law.

*McNary* held that an administrative entity was not exempt from Chapter 610 merely because it had no duty to report its

findings. The court stated that this argument ignored the third category of the definition of public governmental body. A committee subject to the Sunshine Law need only be "authorized" or "empowered" to report. To hold otherwise would circumvent the purpose of the law. A committee will not be excused from the ambit of the Sunshine law because it fails to disclose its intention of making a report or recommendation. *Id.*

It would also circumvent the purpose of the Sunshine Law to prevent an administrative entity from reporting merely to shield its actions from disclosure. However, the Court need not pursue this analysis because the Safety and Security Department is at least authorized to report summaries of its records to the President which is sufficient under the spirit and letter of the Sunshine Law as construed by *McNary* to constitute a committee which is "authorized or empowered to report" pursuant to Mo.Rev.Stat. § 610.010.

Defendants also argue that the records sought are retained by the Safety and Security Department of SMSU but that the records are not retained by the President of the University or the Board of Regents. Defendants contend that because the Department of Safety and Security does not report directly to the Board of Regents, the department's records are not retained by the Board. However, *Tipton* illustrates that legal control over the documents satisfies the requirement that a public governmental body "retain" the records.

For example, in *Tipton*, the city coordinator of Wentzville, an administrative officer of the city, retained billing statements in his office. The court held that the city coordinator was a public governmental body and the billing statements were public records as defined by the Sunshine Law. The *Tipton* court concluded that the billing statements were records retained by the Board of Aldermen and the Mayor because the Board and the Mayor had the power to direct the city coordinator to prepare maintain and retain the records.

Similarly, defendant Batchelder, director of Campus Safety and Security retains criminal investigation and incident reports. In the instant case, the Board of Regents is vested with general management and control of the University.

Mo.Rev.Stat. § 174.120 states that:

Each state teachers college shall be under the general control and management of its board of regents, and the board shall possess full power and authority to adopt all needful rules and regulations for the guidance and supervision of the conduct of all students while enrolled as such; ... *to direct what reports shall be made* ... and to have the entire management of the college. (emphasis added).

The Board of Regents cannot reasonably claim that it has no authority over the Department of Safety and Security which retains criminal investigation reports and incident reports, especially when the Board of Regents has statutorily defined control over the entire school, including the Safety and Security Department. Significantly, the Board of Regents cannot claim that it has no legal control over the records when at the same time it adopts and approves university policies concerning the security office records, as well as media and administrative policies concerning the open meeting and records law. Thus, the Board of Regents is a public governmental body with the full power to adopt rules and regulations, direct what reports shall be made, including criminal investigation and incident reports, and to manage the entire college.

In *Tipton*, the trial court properly found that the Mayor, city coordinator and members of the Board of Alderman each had legal control over the billing statements. Thus the court found that, for purposes of the Open Meetings Act, the Board of Aldermen and the Mayor "retained" the records. This Court is satisfied that the Board of Regents legally "retains" the records of the Safety and Security Department as that word has been construed under *Tipton*. This Court additionally considers that the Safety and Security Department's activity in reporting summaries to the President falls within the statute's provision for a committee which reports to any of the

"above named entities under § 610.010–610.030."

Moreover, even if defendants renounce the Board of Regents' general legal authority and power to direct "what records shall be made" to include that records be prepared, maintained and retained by the Safety and Security Department, *Tipton* held that one person can be considered a public governmental body. *Tipton* noted that the city coordinator was chief assistant to the Mayor. His position as chief assistant to the Mayor encompassed making determinations which affected the public, including preparing and presenting annual reports of the city's affairs.

Therefore the court held that the city coordinator was "clearly a 'public governmental body'", even if the city coordinator did not have policy-making authority. The trial court properly found that the city coordinator was a public governmental body within the meaning of the Sunshine Law. *Id.* at 329. Because the city coordinator retained the billing statements and the Board of Alderman had legal control over the billing statements, the Court found that the Board of Aldermen also retained the billing statements.

Similarly, in *McNary* it was argued that a St. Louis County executive could not be a public governmental body because he was a body of one. The court concluded that "while a single member body cannot have meetings, it can have records. One aspect of the Sunshine Law is that public records

be open. Thus, it is not inconsistent to hold a single member body as a governmental entity." *Id.* at 537.

Under the authority of *Tipton* and *McNary*, the director of Safety and Security, could be considered a public governmental body. The director of Safety and Security, who is subordinate to the Board of Regents and the President, makes determinations which affect the public, presents summaries of the criminal investigation and incident reports to the President and prepares, maintains and retains the reports.

In addition, the Board of Regents has statutory control and legal authority over the Department and its records. Therefore whether this Court determines that the Board of Regents is a public governmental body which legally retains the criminal investigation reports of the Safety and Security Department or whether this Court determines that the director of Safety and Security is a public governmental body, under the Missouri Sunshine law, the criminal investigation and incident reports are public records retained by a public governmental body.

Defendants assert that even if the records sought are public records subject to the Missouri Sunshine Law, the records fall within one of the exemptions to disclosure. Section 610.021 enumerates fifteen exemptions pursuant to which a public governmental body is authorized to close meetings, records and votes.[1]

---

1. Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent that they relate to the following:
    (1) Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representative and its attorneys. However, any vote relating to litigation involving a public governmental body shall be made public upon final disposition of the matter voted upon provided however, in matters involving the exercise of the power of eminent domain, the vote shall be announced or become public immediately following the action on the motion to authorize institution of such a legal action. Legal work product shall be considered a closed record.

    (2) Leasing, purchase or sale of real estate by a public governmental body where public knowledge of the transaction might adversely affect the legal consideration therefor. However, any vote or public record approving a contract relating to the leasing, purchase or sale of real estate by a public governmental body shall be made pubic upon execution of the lease, purchase or sale of the real estate;
    (3) Hiring, firing, disciplining or promoting an employee of a public governmental body. However, any vote on a final decision, when taken by a public governmental body, to hire, fire, promote or discipline an employee of a public governmental body must be made available to the public within seventy-two hours of the close of the meeting where such action occurs; provided, however, that any employee so affected shall be entitled to

References to campus criminal investigation and incident reports or records of a campus law enforcement unit are noticeably absent from the list of exemptions under the Sunshine Law. In fact, none of the fifteen exemptions even generally alludes to criminal investigation and incident reports of a non-commissioned campus law enforcement unit or a commissioned law enforcement agency.

■ Sub-paragraph six lists as records that may be closed, "scholastic probation, expulsion or graduation of identifiable individuals, including records of individual test or examination scores, however, personally identifiable student records maintained by public educational institutions shall be open for inspection by the parents, guardian or other custodian of student under the age of 18 years, and by the parents, guardian or other custodian and the student if the student is over the age of 18 years." The Court notes that § 610.010(4) does not contain language closing "personally identifiable student records" to anyone. It merely mandates that these records be open to the parents or, to the student. *Oregon County R–IV v. LeMon,* 739 S.W.2d 553 (Mo.Ct. App.1987).

The types of records exempted by subparagraph six suggest that the legislature did not intend to exempt records maintained by university police departments for law enforcement purposes. A Florida case which involved construction of the Florida Open Records Act is noteworthy because the court interpreted an open records exemption similar to the Missouri exemption. The Florida statute stated in pertinent part: "Every pupil or student shall have a right of privacy with respect to the educational records kept on him." Fla.Stat. § 228.093(3)(d).

*Campus Communications v. Criser,* 13 Med.L.Rptr. 1398 (Fla.1986), concluded that police reports are not educational records and that student educational records such as test scores and aptitude tests are quite appropriately required by law to be kept confidential, but an individual's enrollment at a state university does not entitle him or her to any greater privacy rights than members of the general public when it comes to reporting criminal activity. *Criser* stressed that the Florida legislature never intended to make university students a specially protected class of crime victims (or suspects).

■ There is no other specific or implied provision of the Missouri Sunshine Law which permits defendants to refuse to disclose the reports in question other than

prompt notice before such decision is made available to the public;

(4) The state militia or National Guard or any part thereof;

(5) Nonjudicial mental or physical health proceedings involving identifiable persons, including medical, psychiatric, psychological, or alcoholism or drug dependency diagnosis or treatment;

(6) Scholastic probation, expulsion, or graduation of identifiable individuals, including records of individual test or examination scores, however, personally identifiable student records maintained by public educational institutions shall be open for inspection by the parent, guardian or other custodian of students under the age of eighteen years and by the parents, guardian or other custodian and the student if the student is over the age of eighteen years;

(7) Testing and examination materials, before the test or examination is given, or if it is to be given again, before so given again;

(8) Welfare cases of identifiable individuals;

(9) Preparation, including any discussions or work product, on behalf of a public govern-mental body or its representatives for negotiations with employee groups;

(10) Software codes for electronic data processing and documentation thereof;

(11) Specifications for competitive bidding, until either the specifications are officially approve by the public governmental body or the specifications are published for bid;

(12) Sealed bids and related documents, until the earlier of either when the bids are opened, or all bids are accepted or all bids are rejected;

(13) Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such;

(14) Records which are protected from disclosure by law;

(15) Meetings and public records relating to scientific and technological innovations in which the owner has a proprietary interest.

possibly subsection fourteen of § 610.021 which exempts "records which are protected from disclosure by law." Defendants assert that the Missouri Sunshine Law exempts information protected by FERPA. Section 610.011.2 of the Sunshine Law states in pertinent part:

"Except as otherwise *provided* by law ... all public records of public governmental bodies shall be open ..."

Section 610.021(14) authorizes closure for:

"Records which are *protected* from disclosure by law ..."

Defendants argue that because the Sunshine Law uses the terms "provided" and "protected", the statute is not limited to protection for records "prohibited" from disclosure by law. Defendants submit that to suggest that FERPA does not provide for "protection" of student records as stated in § 610.021(14) is contrary to the intent of FERPA as stated in the implementing regulation. The implementing regulation, 34 C.F.R. § 99.2, indicates that the purpose of FERPA is to set out requirements for the protection of privacy of parents and students under § 438 of the General Education Provisions Act.

Defendant claims that a Missouri court has ruled on this issue finding FERPA a valid exemption under the Sunshine Law. Defendant relies on *Oregon County* which appeared to assume that FERPA could fall within the definition of "otherwise protected by law" as an effective bar to disclosure under the Sunshine Law. However, in *Oregon County*, the records at issue were not records for which disclosure could result in a loss of federal funding under FERPA. Therefore it cannot be said that the issue of whether FERPA was considered exempt under the Sunshine Law as "otherwise protected by law" was squarely before the court. The *Oregon County* court certainly did not issue a specific ruling that FERPA properly fell within any Sunshine law exemption. That precise issue is before this Court.

In addition, considering the liberal construction to be accorded the Sunshine Law and the correspondingly narrow construction to be accorded the exemptions, the phrase "protected by law" in subsection fourteen should be narrowly construed to include only records which are prohibited from disclosure by law. A liberal reading of the exemption would conflict with the purpose and policy of the Missouri legislature in enacting the Sunshine Law which was to keep records open to public scrutiny.

The only Missouri case this Court has located which found an exemption under subsection fourteen was based on a law which "prescribes that investigation information under [section 326.134] shall be privileged and confidential. Because § 326.134 declares disciplinary information to be privileged and confidential, such information falls within § 610.021(14) and may be closed to the public." *Christianson v. Missouri State Board of Accountancy*, 764 S.W.2d 943 (Mo.Ct.App.1989). Moreover, *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y.1977) stated that it is "obvious that the 1974 Act does not provide a privilege against disclosure of student records.... Rather by threatening financial institutions, it seeks to deter schools from adopting policies of releasing student records." *Id.*

After examination of the statutes and case law of the state of Missouri, the Court concludes that there is no Missouri statute or court determination that would allow defendants to refuse to disclose the reports in question, except *Hyde v. City of Columbia*, 637 S.W.2d 251 (Mo.Ct.App.1982) and related tort liability. This Court concludes that the records sought by plaintiff are public records and are not subject to any exemptions under the Missouri Sunshine Law. This Court also concludes that FERPA does not close from public view the SMSU criminal investigation and incident reports because FERPA does not prohibit disclosure by law, therefore it does not fall within the ambit of subsection fourteen of § 610.021.

This Court will briefly address *Hyde v. City of Columbia*, because the finding in *Hyde* affects release of the contents of the criminal investigation and incident reports. *Hyde* emphasized that the enumerations of

§ 610.021 do not exempt from disclosure the investigation records of a law enforcement agency. *Hyde* determined that in the absence of an intention otherwise discernable, the records of the criminal investigation process up to the event of arrest are public records altogether unprotected from disclosure on demand. *Id.* at 259.

Although the Safety and Security Department at SMSU is not a commissioned law enforcement agency, it operates at least as a de facto law enforcement agency. Therefore, the holding in *Hyde* should be applied to the instant case because the same reasoning follows in ascertaining how a non-commissioned law enforcement unit's records should be treated under the Sunshine Law. The Safety and Security Department's records are analogous to commissioned police reports which are not exempt from disclosure under the Sunshine Law. In addition, this Court's duty is to give the Sunshine Law the effect the legislature intended. The clear purpose of the Sunshine Law is to open official conduct to the scrutiny of the public.

In *Hyde* a victim brought an action against the city of Columbia and a local newspaper alleging negligent disclosure of her name and address by city police and negligent publication of that information while her assailant was still at large. The Court of Appeals held that disclosure of the victim's name and address was not a public record which was required to be disclosed under the Sunshine Law. The plaintiff's name and address was of such trivial public concern compared with high probability of risk to her by publication that the newspaper owed a duty to use reasonable care not to endanger the victim. The court noted that a duty is imposed on an actor in some circumstances to foresee that misconduct of a third person will result in injury to another.

The *Hyde* court expressed displeasure with the Missouri Sunshine Law, which unlike many state open records acts and the Federal Freedom of Information Act, does not explicitly exempt from public disclosure, records of the criminal investigation process for law enforcement purposes to the extent that such records would interfere with enforcement proceedings, deprive a person of a right to a fair trial or an impartial adjudication, constitute an unwarranted invasion of personal privacy, disclose the identity of a confidential source, disclose investigative techniques and procedures or endanger the life or physical safety of law enforcement personnel.

The *Hyde* court urged the Missouri legislature to adopt a legislatively defined police investigation exemption to the Sunshine Law definition of public records. *Hyde* noted that a police department policy not to release such information did not amount to legislation. *Hyde* emphasized that to construe the Sunshine Law to open all criminal investigation information to anyone with a request would not serve public safety policy or the personal security of a victim.

Therefore *Hyde* held that, at the very least, the Sunshine Law must be construed to protect the name of a victim whose identifiable assailant is still at large. The *Hyde* court stated that it was not free to fashion another formal exception to the Sunshine Law however egregious it considered the legislative lapse. *Missouri Pub. Serv. Co. v. Platte–Clay Elec. Coop.*, 407 S.W.2d 883, 891 (Mo.1966). "The contours of any such public policy, balanced and counterpoised between the disparate interests in open government and a secure citizenry, is for the legislature." *Hyde*, 637 S.W.2d at 263. This Court is similarly bound to follow the Missouri Sunshine Law and leave further exemptions in the hands of the legislature.

## FAMILY EDUCATIONAL RIGHTS and PRIVACY ACT

■ Plaintiff asserts that the criminal investigation and incident reports she seeks are not educational records as defined by FERPA and that pursuant to the law enforcement exception under FERPA, she is entitled to access to the reports. Therefore, FERPA does not impose a penalty for disclosure of such reports. Alternatively, plaintiff contends that if FERPA is construed to impose a penalty for disclosure of the criminal investigation and incident re-

ports, FERPA is unconstitutional because it creates an arbitrary classification of student and non-student criminals and victims and creates a classification which results in unequal police protection. Plaintiff adds that if FERPA penalizes disclosure, FERPA is unconstitutional because it restricts her access to information which the public generally has a right to know.

The Court notes that a statute is to be construed, if such construction is fairly possible, to avoid raising doubts of its constitutionality. *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). If a serious doubt of constitutionality may be avoided, the court should adopt such construction. *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Similarly, when legislation otherwise suspect is fairly susceptible to an interpretation shielding it from constitutional doubt, federal courts are duty bound to give it that reading.

FERPA is not a law which prohibits disclosure of educational records. It is a provision which imposes a penalty for the disclosure of educational records. *Student Bar Ass'n v. Byrd*, 293 N.C. 594, 239 S.E.2d 415, 419 (N.C.1977) stated that the Buckley amendment (FERPA) does not forbid disclosure of information concerning a student. FERPA provides for the withholding of federal funds otherwise available to an educational institution which has a policy or practice of permitting the release of educational records.

Defendants maintain that even if plaintiff is entitled to the criminal investigation and incident reports under the Missouri Sunshine Law, FERPA purports to impose a penalty for disclosing the reports. Defendants assert that the requested records are educational records and that SMSU must keep such records confidential as a condition to receiving federal funds.

Section 1232g(b)(1) of FERPA states in pertinent part:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization, other than to the following—

Section 1232g(b)(2) of FERPA states in pertinent part:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing or providing access to, any personally identifiable information education records other than directory information, or as is permitted under paragraph (1) of this subsection unless—

(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

(B) such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

FERPA defines "education records" as:

(4)(A) Except as may be provided otherwise in subparagraph (B), those records, files, documents, and other material which—

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

(B) The term "education records" does not include—

(i) records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

(ii) if the personnel of a law enforcement unit do not have access to education records under subsection (b)(1) of this section, the records and documents of such law enforcement unit which

(I) are kept apart from records described in subparagraph (A),

(II) are maintained solely for law enforcement purposes, and

(III) are not made available to persons other than law enforcement officials of the same jurisdiction.

(5)(A) For purposes of this section the term "directory information" relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

FERPA protects as confidential, information which a student is required to produce or divulge in conjunction with application and attendance at an educational institution. FERPA also protects academic data generated while an individual is a student at an educational institution. Criminal investigation and incident reports are not the same type of records which the Act expressly protects.

Criminal investigation reports are specifically excluded from the educational records which FERPA protects. Criminal investigation and incident reports do not contain the same type of information which a student is required to submit as a precondition to enrollment or attendance, nor is this type of information created in the natural course of an individual's status as a student.

The fact that the statute specifically exempts records maintained for law enforcement purposes demonstrates that Congress did not intend to treat criminal investigation and incident reports as educational records. The underlying purpose of FERPA was not to grant individual students a right to privacy or access to educational records, but to stem the growing policy of many institutions to carelessly release educational information. *Smith v. Duquesne Univ.*, 612 F.Supp. 72, 80 (W.D.Pa.1985).

In a speech given by Senator Buckley, sponsor of FERPA, Senator Buckley stated that the immediate reason for the legislation was the growing evidence of abuse of student records across the nation. Senator Buckley commented that information about pupils and their parents is often collected by schools without the informed consent of students or parents—information such as ethnic attitudes, personality tests, family life, values and social development. *See* Speech to Legislative Conference of the National Congress of Parents and Teachers, 120 *Congressional Record* 36532 (Dec. 13, 1974).

Senator Buckley gave an example of one type of abuse which FERPA was designed to prevent—the insertion of potentially prejudicial anecdotal comments and factual inaccuracies into student's school records. "When parents and students are not allowed to inspect such school records and make corrections, such material can have a devastatingly negative effect on the academic future and job prospects of an innocent, unaware student. A simple inaccuracy or a comment by a spiteful, neurotic teacher can potentially ruin a students' future." *Id.*

In another address, Senator Buckley responded to confusion surrounding the implications of the amendment and encouraged schools to develop standards concerning what should be included in student folders. Schools were advised to destroy such things as unsubstantiated teachers' opinions or language which categorized students. There was considerable confusion regarding how confidential teacher recommendations should be handled in order to ensure candid and frank assessments of student's strengths and weaknesses. *See* Questions About and Objections to the Buckley Amendment–The Family Educational Rights and Privacy Act, 121 *Congressional Record* 13990 (November 19, 1974).

The limited legislative history available demonstrates that FERPA seeks to deter schools from indiscriminately releasing student educational records. Nothing in the legislative history of FERPA refers to a policy or intent to protect campus law enforcement unit records which contain student names or other personally identifiable information.

Defendants argue that, in accordance with the Department of Education's interpretation of the statute, if criminal investigation reports which are kept separately from education records are given to persons other than law enforcement officials, the records must be considered educational records and must be kept confidential or the school may be threatened with a loss of federal funding. However, FERPA does not explicitly address how it intended to classify security reports which have been disclosed to persons other than law enforcement officials. The statute's exemption for law enforcement records demonstrates that law enforcement records are not considered in the same category as educational records.

It is reasonable to assume that criminal investigation and incident reports are not educational records because, although they may contain names and other personally identifiable information, such records relate in no way whatsoever to the type of records which FERPA expressly protects; i.e., records relating to individual student academic performance, financial aid or scholastic probation which are kept in individual student files. These records are quite appropriately required to be kept confidential.

The language of the statute which protects "educational records" demonstrates that the legislature did not intend to include records maintained by a university police department for law enforcement purposes. The Court will not assume that the legislature intended a result which in no way furthers the plain purpose of the statute. The function of the statute is to protect educationally related information.

Furthermore, an individual's enrollment at a state university should not entitle him or her to any greater privacy rights than members of the general public when the privacy interest relates to criminal investigation and incident reports. Nor could the federal government have reasonably intended to make university students a specially protected class of criminal suspects. This Court concludes that the records sought by plaintiff are not educational records the release of which could result in a loss of federal funding under FERPA.

Alternatively, plaintiff submits that FERPA is unconstitutional. A statute which facially does not run afoul of constitutional protections may be struck down as an infringement upon constitutional rights as a consequence of its interpretation and application. Plaintiff asserts that if FERPA imposes a penalty for disclosure of the reports, FERPA is unconstitutional because it restrains the exercise of her constitutional rights under the First and Fourteenth Amendments and because it hinders her access to information as a student when the same information is available to the public generally. Plaintiff also argues that FERPA conditions receipt of a benefit on an arbitrary classification of students and non-students.

Plaintiff asserts that the general public is given greater access to police reports which affect them than she receives as a student concerning like reports which affect her. She also alleges that she is being denied equal police protection compared with members of the general public because of decreased access to information relating to campus crime and the practices of the SMSU Safety and Security Department. Plaintiff claims that because of delay in filing incident reports with the Springfield Police Department or in some cases, not filing such reports, the police are unable to promptly investigate campus crime. This deprives plaintiff of the quality of police protection she would receive if she were a non-student living off campus.

The guarantee of equal protection applies to all governmental actions which classify individuals for different benefits or burdens under the law. The guarantee of equal protection applies to actions by both

state and federal governments. While the express terms of the Fourteenth Amendment equal protection clause apply only to state and local governments, where the federal government makes a classification which, if it were a state, would violate the Fourteenth Amendment's equal protection clause, the Court has treated this as a violation of the Fifth Amendment due process clause—which is directly applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

The equal protection clause prevents government from making improper classifications. It guarantees that people who are similarly situated will be treated similarly. Whether a statute violates the equal protection clause must be determined by looking at the legislature's objective in enacting or maintaining the statute.

■ Under traditional equal protection analysis, a legislative classification must be sustained if the classification is rationally related to a legitimate governmental interest. *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). This standard applies to statutes which are not based on a suspect classification or involve quasi-suspect categories. The Court must ask whether it is conceivable that the classification bears a rational relationship to an end which is not prohibited by the Constitution. The statute will not be stricken if there is some rational relation between the means selected by the legislature and a legitimate legislative objective.

Not all objectives are legitimate. In *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) the Court struck down an Alabama statute that taxed out-of-state insurance companies at a higher rate than in-state companies. The Court concluded that favoring domestic business by discriminating against non-resident business was not a legitimate purpose.

■ If FERPA imposes a penalty for the disclosure of student security and crime reports produced by a non-commissioned campus law enforcement unit, FERPA creates an irrational classification in violation of the equal protection component of the due process clause of the Fifth Amendment. The distinction between student and non-student suspects, criminals, victims and witnesses is not related to their student or educational status. To the extent that FERPA results in a classification which discriminates against a student's access to information concerning student versus non-student crimes, the classification has no logical basis. The classification is not rationally related to a governmental interest in protecting student educational records and keeping confidential information which a student is required to provide to the school or which the school itself generates concerning educational records.

The Court finds nothing in the language of the statute or its legislative history which indicates that student criminals, witnesses or victims should be granted special privacy privileges. By the same token, a student should not be denied access to information concerning student criminals, victims or witnesses merely because of his or her status as a student. Moreover, there is no rational basis to support the effect of the classification; if a campus has a commissioned law enforcement agency, such records are released in conjunction with the police department of that jurisdiction, but if the university has a non-commissioned police department, students and the public do not have access to the same kind of information.

In addition, plaintiff, as a reporter and a member of the general public, is entitled not to be singled out as a student with the result that she receives neither the same access to crime reports as the general public, nor the same level of police protection. In *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn.1984) the court stated that the equal protection clause is applicable not only to discriminatory legislative action but also to discriminatory governmental action in administration and enforcement of the law. *Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 485 F.Supp. 400, 409 (N.D.Ill.1980), reversed on other grounds, 639 F.2d 373

(1981) (administrative classifications can give rise to an equal protection claim).

■ Although there is no specific right to police protection, a state may not discriminate in providing such protection. *Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir.1988). In terms of police protection, plaintiff maintains that merely because she is a student she is treated differently than the general public. If FERPA imposes a penalty for the release of university criminal investigation and incident reports, the penalty results in affording plaintiff less police protection because FERPA operates to protect information concerning student criminal suspects. The Court considers this a pernicious classification because plaintiff fails to receive the same police protection which a similarly situated non-student receives.

The statute is not reasonably designed to protect student educational interests if it threatens the loss of federal funding for the release of criminal investigation and incident reports regarding students. The penalty does not further the federal policy of protecting educationally related privacy interests of students. If, as the Department of Education asserts, FERPA operates to impose a penalty the result of which treats similarly situated individuals dissimilarly and has no conceivable rational basis, the statute is unconstitutional under the due process clause of the Fifth Amendment.

■ Plaintiff also contends that, if FERPA imposes a penalty for release of the criminal investigation and incident reports, FERPA violates her First Amendment rights. *Quad–City Community News Serv., Inc. v. Jebens*, 334 F.Supp. 8 (S.D. Iowa 1971) stated that any classification which serves to penalize or restrain the exercise of a First Amendment right, unless shown to be necessary to promote a compelling governmental interest is unconstitutional. The Supreme Court has stated:

> Public records by their very nature are of interest to those concerned with the administration of government and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. *Nebraska Press Ass'n v. Stewart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

Plaintiff acknowledges that courts have not granted journalists special access to government files for reports because this would be a denial of equal protection rights of non-reporters. Plaintiff is not claiming special access to information as a journalist, she is claiming access as a member of the public generally and asserts that, as a student, she is denied that right.

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court invoked the "right" to gather information in the context of criminal trials. The Court stated: "it is not crucial whether we describe this right … as a right of access or a right to gather information for we have recognized that without some protection for seeking out news, freedom of press could be eviscerated." *Richmond*, 448 U.S. at 576, 100 S.Ct. at 2827, citing *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). It is not entirely clear whether *Richmond Newspapers* recognized a First Amendment right of access to government information which is newsworthy.

Justice Stevens summarized the majority opinion in his concurrence: "arbitrary interference with access to important information is an abridgment of the freedom of speech and of the press protected by the First Amendment." *Id.* 448 U.S. at 583, 100 S.Ct. at 2830. Justice Stevens noted: "This is a watershed case.… Never before has [the Court] squarely held that the acquisition of newsworthy matter is entitled to any constitutional protection whatsoever." *Id.* at 582, 100 S.Ct. at 2830.

■ *Richmond* also noted that in a variety of contexts this Court has referred to a First Amendment right to receive information and ideas. *See also, Kleindienst v.*

*Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Freedom of speech includes not only the right to utter or to print, but also the right to receive. It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail. *Red Lion Broadcasting, Co. v. FCC,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969). It is also surely one of the purposes of the First Amendment to enable the public to scrutinize the actions of government through access to government information.

Plaintiff states that at least one court has recognized that the press and the public have a constitutional right of access to information concerning crime in the community and a right of access to information relating to activities of law enforcement agencies. *Houston Chronicle Publishing Co. v. Houston,* 531 S.W.2d 177, 186 (Tex. Civ.App.1975). Plaintiff is not seeking access to information which is being kept confidential allegedly to protect the public welfare, but rather is seeking the same access as is enjoyed by non-students and their access to police investigation reports.

Significantly, *Branzburg* held: "We do not question the significance of free speech, press or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection." *Id.* at 681, 92 S.Ct. at 2656. State courts have applied this principle, in the area of crime reports gathered by police departments, generally holding that at least some reports are constitutionally required to be available to the public, despite competing interests such as a suspect's right to privacy. *Houston Chronicle,* 531 S.W.2d at 188.

*Houston Chronicle* noted the importance of these records to the press for use in reporting of crimes of interest to the public. Reporting of crime to the interested public would be damaged, hindered, and hampered by the unavailability of these records. Borrowing from the purpose asserted for access to information in *Houston,* this Court agrees that it is our duty to foster the fundamental philosophy of the American constitutional form of representative government which holds that government is the servant of the people and the public is entitled to full and complete information regarding the affairs of government and the official acts of those who represent them. *Id.* The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. *Id.*

Similarly, plaintiff is entitled to full and complete information regarding the affairs of the Board of Regents and its administrative entities which fall within the meaning of a public governmental body. The Safety and Security Department cannot exercise complete discretion in determining what records to release. "Law has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official [or] some bureaucrat. Where discretion is absolute, man has always suffered." *United States v. Wunderlich,* 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951) Douglas, J., dissenting.

■ Therefore, this Court concludes that defendants' actions in withholding the criminal investigation and incident reports which contain names and other personally identifiable information, is unconstitutional under the equal protection guarantee of the Fifth Amendment due process clause and under the First Amendment. Plaintiff requested $5,000 in actual damages resulting from the violation of her constitutional rights. There was no evidence that plaintiff suffered any actual damages. However, a plaintiff whose constitutional rights have been violated is entitled to a finding of liability and nominal damages even if no actual damages have been shown. *Duvall v. Sharp,* 905 F.2d 1188, 1190 (8th Cir. 1990); *Westborough Mall Inc. v. City of Cape Girardeau,* 794 F.2d 330, 339 (8th Cir.1986).

In conclusion, the criminal investigation and incident reports are not exempt from disclosure under the Missouri Sunshine Law or protected as educational records by FERPA. If FERPA is interpreted other-

wise, to impose a penalty for disclosure of the criminal investigation and incident reports, it is unconstitutional. Lastly, plaintiff is, and always has been, at liberty to publish information which she has obtained from collateral sources which directly relates to a student.

Accordingly, it is hereby

ORDERED that plaintiff's request for a temporary restraining order and a preliminary injunction is denied as moot; and it is further

ORDERED that the relief plaintiff requests in the form of a permanent injunction is granted; and it is further

ORDERED that plaintiff's request for a penalty as a result of a violation of the Missouri Sunshine Law, Mo.Rev.Stat. Chapter 610 is denied; and it is further

ORDERED that plaintiff's request for a declaratory judgment is granted and this Court finds that the criminal investigation and incident reports are not educational records as set forth in 20 U.S.C. § 1232g and that 20 U.S.C. § 1232g is not a justification for violating the Missouri Sunshine Law, Mo.Rev.Stat. Chapter 610; and it is further

ORDERED that defendants' actions in withholding the criminal investigation and incident reports are unconstitutional under the Fifth Amendment due process clause and the First Amendment; and it is further

ORDERED that plaintiff is awarded nominal damages of $1.00.

ADDENDUM TO ORDER OF
MARCH 13, 1991

This court's order of March 13, 1991 is amended to award plaintiff costs.

IT IS SO ORDERED.