**Charles R. ALTHAUS, In His Capacity as Coroner of Vanderburgh County, Indiana, Appellant–Defendant,**

v.

**The EVANSVILLE COURIER COMPANY, Appellee– Plaintiff.**

No. 82A01–9212–CV–400.

Court of Appeals of Indiana, First District.

June 8, 1993.

Joseph H. Harrison, Jr., Bowers, Harrison, Kent & Miller, Evansville, for appellant-defendant.

Terry Noffsinger, Noffsinger, Price, Bradley & Shively, Evansville, for appellee-plaintiff.

BAKER, Judge.

Today we are asked to determine what information a coroner may and must disclose. Our examination arises from an interlocutory appeal brought by defendant-appellant Charles Althaus, in his capacity as Coroner of Vanderburgh County (the Coroner), challenging the trial court's denial of his motion to dismiss, or in the alternative, motion for summary judgment. Opposing the Coroner is The Evansville Courier Company (the Newspaper). After concluding that (1) its denial of the Coroner's motions involved a substantial question of law, and (2) the early resolution of the legal issues would promote a more orderly disposition of the case, the trial court certified for interlocutory appeal the following issue: [1]

> Whether IND.CODE 36-2-14-18 [the Coroner's Statute] sets forth a special rule applicable to coroners within this state which: (1) specifies the information which the coroner is required to make available (A) for public inspection, (B) to the next of kin, and (C) to insurance companies investigating a claim, despite the discretion previously given coroners and other public officials under IND. CODE 5-14-3-4(b) to completely withhold information under certain circumstances, and (2) limits a coroner's authority to make any information beyond that so specified available to anyone.

*Record* at 98.

## STATEMENT OF FACTS

The material facts in this case are undisputed. On February 24, 1992, an Evansville police officer, James Gibson, Jr., was found dead in his home. Later that day, the Coroner ordered a physician to conduct an autopsy on Gibson's body.

About two weeks later during a news conference, the Coroner declared Gibson committed suicide by overdosing on prescription drugs. Gibson's widow, however, disputed the accuracy of the Coroner's declaration during an ensuing press conference. On March 11, 1992, in an effort to aid its investigation of the developing controversy, the Newspaper served a document request upon the Coroner, asking for "[a]ny and all reports or documents, including autopsy reports and results of all toxicology tests, concerning the death of James Gibson, Jr.,...." *Record* at 41. The next day, the Coroner formally refused the Newspaper's document request.

Approximately one month later, on April 9, 1992, the Newspaper sued the Coroner to compel him to release a copy of Gibson's autopsy report. In response, the Coroner filed a motion to dismiss the Newspaper's complaint and, in the alternative, a motion for summary judgment. The trial court denied both motions and, in conjunction with its denials and at the parties' request, entered extensive findings of fact and conclusions of law. In relevant part, the trial court concluded:

3. Section 4 of the Access to Public Records Act allows the exception of "investigatory records of law enforcement agencies" from the [Access to Public Records] Act at the discretion of the public agency.

4. An "investigatory record" is defined as being "information compiled in the course of the investigation of a crime."

6. The Coroner has come forward with no evidence as required by the [Access to Public Records] Act which would link the records of James Gibson, Jr. to an investigation of a crime, nor has in camera review of the autopsy records revealed any such possible criminal investigations.

9. [O]n its face, [the Coroner's Statute] merely provides that despite the investigatory records exception, the Coroner must release, at a minimum, the information set forth in this statute. The statute in no manner limits the Coroner's discretion to provide other relevant or pertinent information.

10. Once the Coroner proves his record falls within one of the categories for exempted records ... and establishes the content of the record with adequate specificity, the party seeking ac-

---

**1.** *See* Ind.Appellate Rule 4(B)(6).

cess of the public record has the burden of proof to show the denial of access was arbitrary or capricious.

11. The Coroner has yet to show this court that the autopsy report falls under. the exempted record section as a record of a criminal investigation. . . .

13. The court hereby finds that genuine issues of material fact exist as to whether or not the record in question is an investigatory record compiled in the course of an investigation of a crime, and whether or not the denial of public access was arbitrary or capricious.

*Record* at 86–88. Thereafter, upon the Coroner's motion, the trial court certified this case for interlocutory appeal.

## DISCUSSION AND DECISION

### A. Standard of Review

The trial court entered special findings of fact and conclusions of law to support its denials of both the Coroners' motion to dismiss and motion for summary judgment. In doing so, the trial court considered matters outside the pleadings, and thus, we treat the Coroner's motion to dismiss as a motion for summary judgment. Ind.Trial Rule 12(C).

■ Specific findings and conclusions are not required by Ind.Trial Rule 56, but neither are they prohibited. *P.M.S. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1381 n. 1. Normally, the requested entry of specific findings and conclusions triggers the appellate standard of review contained in Ind.Trial Rule 52, which requires us to reverse the trial court's judgment only if the findings or conclusions are clearly erroneous. On the other hand, we will affirm a trial court's judgment on any legal theory supported by the record and this standard is not affected by the entry of specific findings and conclusions. *Id.* T.R. 52 applies only to those cases which proceed to trial, not those cases disposed of in summary proceedings. Although our review of the denial of summary judgment is aided when the trial court enters specific findings and conclusions, the trial court's entry does not affect our standard of review. *Id.*

### B. Statutory Interpretation

■ This case presents a pure question of statutory interpretation and thus, in construing the three statutes involved herein, we are governed by some familiar rules. There is a strong presumption that the legislature did not enact a useless provision. *Hinshaw v. Board of Commissioners of Jay County* (1993), Ind., 611 N.E.2d 637, 638. We also presume that in enacting a particular piece of legislation, the legislature is aware of existing statutes covering the same subject. *Indiana Alcoholic Beverage Commission v. Osco Drug* (1982), Ind.App., 431 N.E.2d 823, 833. When we consider two or more statutes relating to the same general subject matter, we read the statutes *in pari materia*, and we try to construe them together so as to produce a harmonious system. *Id.* In this respect, when we consider two or more statutes on the same subject, we attempt to give effect to both; if, however, the statutes are repugnant in any of their provisions, then the more recent statute will control and operate to repeal the former to the extent of the repugnancy. *Id.* Similarly, where one statute covers a particular subject in general terms and another statute covers the same subject in a more detailed or specific manner, then we will first attempt to harmonize the statutes, but if the statutes are irreconcilably conflicting, the more detailed statute prevails as to the subject it covers. *Id.* With the above rules of statutory interpretation in mind, we now consider the relevant statutory scheme.

### 1. The Indiana Access to Public Records Act

■ The Indiana Access to Public Records Act (the Sunshine Law),[2] codified at IND.CODE 5–14–3–1 *et seq.*, allows any person to inspect and copy the records of any public agency. Subject to certain ex-

2. P.L. 19–1983 (effective January 1, 1984).

ceptions, the Sunshine Law provides in part:

It is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.

The Sunshine Law clearly indicates that the public is to have access to the public records of the government officials who represent the citizenry. Because county coroners are elected government officials, IND.CODE 36-2-14-2, the general rule is that a coroner's official records are subject to public disclosure pursuant to the Sunshine Law.

In 1989, the Indiana Legislature limited the impact of the Sunshine Law as it pertains to coroners. It enacted IND.CODE 36-2-14-18 (the Coroner's Statute), which specifically addressed the subject of which information, exactly, a coroner must disclose and which it has the discretion to withhold. The Coroner's Statute provides:

(a) Notwithstanding IC 5-14-3-4(b)(1) (the Investigatory Records exception, *infra*), when a coroner investigates a death, the office of the coroner is required to make available for public inspection and copying the following:

(1) The name, age, address, sex, and race of the deceased.

(2) The address where the dead body was found, or if there is no address the location where the dead body was found and, if different, the address where the death occurred, or if there is no address the location where the death occurred.

(3) The name of the agency to which the death was reported and the name of the person reporting the death.

(4) The name of any public official or governmental employee present at the scene of the death and the name of the person certifying or pronouncing the death.

(5) Information regarding an autopsy (performed or requested) limited to the date, the person who performed the autopsy, where the autopsy was performed, and a conclusion as to:
(A) the probable cause of death;
(B) the probable manner of death; and
(C) the probable mechanism of death.

(6) The location to which the body was removed, the person determining the location to which the body was removed, and the authority under which the decision to remove the body was made.

(7) The records required to be filed by a coroner under IC 36-2-14-6 and IC 36-2-14-10.

(b) A county coroner or a coroner's deputy who receives an investigatory record from a law enforcement agency shall treat the investigatory record with the same confidentiality as the law enforcement agency.

(c) Notwithstanding any other provision of this section, a coroner shall make available a full copy of an autopsy report upon the written request of the next of kin of the decedent or of an insurance company investigating a claim arising from the death of the individual upon whom the autopsy was performed. The insurance company is prohibited from publicly disclosing any information contained in the report beyond that information that may otherwise be disclosed by a coroner under this section. The prohibition does not apply to information disclosed in communications in conjunction with the investigation, settlement, or payment of the claim.

IND.CODE 36-2-14-18. All the information specifically listed in the Coroner's Statute must be made available for public inspection. The Coroner has no discretion to withhold this information. Furthermore, subsection (c) of the Coroner's Statute requires the Coroner to release a copy of the autopsy report to the next of kin or the appropriate insurance company upon their request.

## 2. Investigatory Records Exception

■ Perhaps recognizing the intensely personal and sensitive nature of a coroner's work, the General Assembly did not see fit to require coroners to release all information acquired during the course of their work. Certain kinds of information were excepted. One such exception, the so-called Investigatory Records exception, provides that records compiled in the course of criminal investigations are exempt from the disclosure requirements of the Sunshine Law at the discretion of the law enforcement agency. *See* IND.CODE 5–14–3–2; 5–14–3–4(b)(1). It is this exception that is at issue in this appeal.

The threshold question of whether a coroner's files may be considered to be investigatory records of a law enforcement agency was previously addressed by this court in *Heltzel v. Thomas* (1987), Ind.App., 516 N.E.2d 103, *trans. denied* (1988), Ind., 529 N.E.2d 345. There, after reviewing the various duties a coroner performs, this court concluded, as a matter of law, that a coroner satisfies the definition of a law enforcement official for purposes of the Sunshine Law when, among other things, the coroner acts pursuant to IND.CODE 36–2–14–6 [3] (the Autopsy Statute). *See Id.* at 105–06. Accordingly, in the wake of the *Heltzel* decision, documents compiled pursuant to the conditions listed in the Autopsy Statute are investigatory records falling within the Investigatory Records exception. Under the Investigatory Records exception, it is within the coroner's discretion to release or withhold them. Because there is no dispute that in this case the Coroner acted because Gibson (1) died when apparently in good health, IND.CODE 36–2–14–6(a)(3), (2) died in an apparently suspicious, unusual, or unnatural manner, IND.CODE 36–2–14–6(a)(4) and/or (3) was found dead, IND.CODE 36–2–14–6(a)(5), the documents created as a result are investigatory records subject to the Coroner's discretion to withhold or release them.

We emphasize a coroner has the initial burden of showing a requested document qualifies as an investigatory record. To make this showing, a coroner must satisfy at least one of the conditions listed in the Autopsy Statute. If one of these conditions is satisfied, a coroner meets his burden of proof under IND.CODE 5–14–3–9(f)(1),[4] and the record by definition is an investigatory record. Furthermore, once a coroner makes this showing, the inquiry ends.[5]

■ If a coroner can neither satisfy one of the conditions listed in the Autopsy Statute, nor demonstrate the record is otherwise related to a criminal investigation, the record is not an investigatory record. Accordingly, pursuant to IND.CODE 5–14–3–9(f)(2),[6] a requesting party may gain access

3. IND.CODE 36–2–14–6, the Autopsy Statute, limits a coroner's duties and provides in part:
   (a) Whenever the coroner is notified that a person in the county:
   (1) has died from violence;
   (2) has died by casualty;
   (3) has died when apparently in good health;
   (4) has died in an apparently suspicious, unusual, or unnatural manner; or
   (5) has been found dead;
   he shall ... notify a law enforcement agency having jurisdiction in that area. The agency shall assist the coroner in conducting an investigation of how the person died and a medical investigation of the cause of death.

4. IND.CODE 5–14–3–9(f)(1) provides:
   If the issue in a de novo review under this section is whether a public agency properly denied access to a public record because the record is exempted under section 4(b) [IND. CODE 5–14–3–4(b) ] of this chapter:

(1) the public agency meets its burden of proof under this subsection by:
   (A) proving that the record falls within any one (1) of the categories of exempted records under section 4(b) of this chapter; and
   (B) establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit.

5. Contrary to the trial court's conclusions, once the Coroner properly asserts the Investigatory Records exception, the Newspaper may not overcome this assertion by arguing the denial was arbitrary and capricious. The denial is arbitrary and capricious, however, if the Coroner cannot make such a showing.

6. This section provides:
   If the issue in a de novo review under this section is whether a public agency properly denied access to a public record because the record is exempted under section 4(b) of this chapter:

to the requested record on the ground that the coroner's denial of access was arbitrary and capricious.

In this case, as we discussed *supra,* the record supports the Coroner's proper assertion of the Investigatory Records exception. Thus, the Coroner has the discretion to release or withhold any information not otherwise covered by the Coroner's Statute. We note there is sound policy supporting this statutory scheme. Although we foster ideals of unrestricted public access to public records, the General Assembly recognized that in some situations, the public's need for detailed autopsy reports is outweighed by the sensitive content of such reports. Moreover, pursuant to the Coroner's Statute, a coroner is already required to release much of the information contained in autopsy reports. Because the Coroner's Statute ensures that the public will have adequate information, we see no reason, and, more importantly, we have no authority, to judicially alter the legislature's statutory scheme.

### CONCLUSION

The Coroner's Statute sets forth a special rule applicable to coroners and provides that all of the information listed in this section must be made available to the public regardless of the Investigatory Records exception. Additionally, a coroner must release a copy of the autopsy report to the next of kin or the appropriate insurance company.

 Regarding other documents not specifically covered by the Coroner's Statute, a coroner may deny the public access to these documents by asserting the Investigatory Records exception. Contrary to both the trial court's conclusions and the Newspaper's assertions, the Coroner is not required to produce evidence linking Gibson's autopsy report to a criminal investigation in order to properly assert the Investigatory Records exception. The *Heltzel* court, as we discussed *supra,* already concluded, as a matter of law, that whenever a coroner acts pursuant to the Autopsy

Statute, he has the discretion to release or withhold the documents he compiles, regardless of whether the circumstances listed in the Autopsy Statute are ultimately related to a criminal investigation. In this case, the record supports the conclusion that at least one of the requisite conditions was shown by the Coroner; accordingly, the Coroner may properly deny the Newspaper access to Gibson's autopsy report. If, on the other hand, one of the circumstances listed in the Autopsy Statute had not been satisfied, then the Coroner's denial would have been arbitrary and capricious, thereby enabling the Newspaper's access to Gibson's autopsy report.

Thus, we must reverse, as clearly erroneous, the trial court's conclusions that (1) the Coroner must demonstrate Gibson's records are linked to a criminal investigation in order to assert the Investigatory Records exception, and (2) the Newspaper may overcome the Coroner's proper assertion of the Investigatory Records exception by showing the Coroner acted arbitrarily and capriciously. Pursuant to Ind.Appellate Rule 15(N), we direct judgment be entered for the Coroner and against the Newspaper.

NAJAM and RUCKER, JJ., concur.

---

(2) a person requesting access to a public record meets the person's burden of proof

under this subsection by proving that the denial of access is arbitrary and capricious.