## THE NEWS–PRESS AND GAZETTE COMPANY, Respondent,

v.

## David O. CATHCART, D.O., Appellant.

### No. WD 54859.

Missouri Court of Appeals, Western District.

June 16, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1998.

Application to Transfer Denied Sept. 22, 1998.

Hershel D. Shepherd, St. Joseph, for appellant.

Errol D. Taylor, Brown, Douglas and Brown, St. Joseph, for respondent.

Before ULRICH, C.J., and SMART and LAURA DENVIR STITH, JJ.

ULRICH, Chief Judge.

David Cathcart, the appointed medical examiner of Buchanan County, appeals the trial court's judgment ordering him to make available to the News–Press and Gazette Company (News–Press) the autopsy report of Melanie Sherman in accordance with the Missouri Sunshine Law, Chapter 610, RSMo. He argues that the medical examiner is not a public governmental body as defined in section 610.010(4).[1] The judgment of the trial

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

court is reversed, and the cause is remanded with directions.

The facts in this case were stipulated by the parties. Melanie Sherman died on July 24, 1997, within Buchanan County as a result of violence. Her death is currently the basis for criminal prosecution of Eric Weston. Mr. Weston was charged with murder in the second degree and armed criminal action for Ms. Sherman's death. David Cathcart is the appointed medical examiner of Buchanan County. Pursuant to his duties as medical examiner, he obtained Ms. Sherman's body on July 24, 1997, and performed an autopsy on the body the next day. News–Press made oral and written requests for access to the autopsy report for inspection and copying in accordance with section 610.023 on July 25, 1997. Dr. Cathcart made a timely denial of News–Press's requests contending that as medical examiner, he was not a public governmental body within the definition of section 610.010(4) and, therefore, was not subject to the Missouri Sunshine Law, Chapter 610. News–Press filed its Motion for Preliminary Injunction and Mandatory Injunction for Enforcement of the Sunshine Law on August 4, 1997. Following a hearing on September 3, 1997, the trial court found that Dr. Cathcart, as medical examiner, was a public governmental body under section 610.010(4) and that the autopsy report was not a closed investigative report under sections 610.100.1(5) and 610.100.2, RSMo Cum.Supp. 1997. The court, therefore, ordered Dr. Cathcart to make available to the News–Press the autopsy report of Melanie Sherman. This appeal followed.

On appeal, Dr. Cathcart argues that the trial court erred in finding that he was a public governmental body under section 610.010(4) of the Missouri Sunshine Law. He contends that, as medical examiner, he is not a public governmental body because he does not make determinations or formulate policies that affect the public.

■ The judgment of the trial court must be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.

banc 1976); *Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 938 (Mo.App.1993).

■ Missouri's public policy provides that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. § 610.011. Missouri's Sunshine Law, Chapter 610, reflects the state's commitment to openness in government. *MacLachlan v. McNary,* 684 S.W.2d 534, 537 (Mo.App.1984). The Sunshine Law is to be liberally construed and exceptions strictly construed to promote open government. § 610.011; *Fulson,* 859 S.W.2d at 939; *MacLachlan,* 684 S.W.2d at 537.

The Sunshine Law defines a public governmental body as "any legislative, administrative governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order." § 610.010(4). Early definitions of public governmental body did not include administrative entities. *See* § 610.010(2), RSMo Supp.1975; *Tribune Publishing Co. v. Curators of the Univ. of Mo.,* 661 S.W.2d 575, 584 (Mo.App.1983)("By its very nature, the quintessence of a 'public governmental body' is the power to govern by the formulation of policies and the promulgation of statutes, ordinances, rules and regulations, or the exercise of quasi-judicial power....Neither the letter nor the spirit of the 'Sunshine Law' presaged an era wherein purely administrative meetings and administrative functions of public bodies without power or authority to govern were to be subject to public participation."). The legislature, however, amended the Sunshine Law in 1982 to expand the definition of public governmental body to include administrative entities. *See* § 610.010(2), RSMo Supp.1982. In determining that a county's annexation study commission was a public governmental body under the Sunshine Law, the Eastern District in *MacLachlan v. McNary,* 684 S.W.2d 534, 538 (Mo.App.1984), explained:

By enactment of the 1982 amendment to Chapter 610, it is apparent that the Legislature intended to affect the entire administrative decision-making process, not just the formal act of voting for the formal

execution of an official document. It is unnecessary that an entity have binding authority for it to be subject to the Sunshine Law. It is within the meaning of the law if its determinations affect the public. *Id.*

■ The medical examiner of Buchanan County is a governmental entity created by statute. § 58.700, RSMo Cum.Supp.1997. Section 58.700 provides that "the governing body of all counties of the second classification ... shall appoint a county medical examiner and set his compensation." *Id.* Chapter 58 imposes certain administrative duties on a medical examiner. A medical examiner shall take charge of the body of a person who dies as a result of violence, investigate the essential facts concerning the medical causes of death, and file a copy of his findings in his office. §§ 58.720.1 and 58.720.5, RSMo Cum. Supp.1997. A medical examiner shall also certify the cause of death in any case where death occurred without medical attendance or where an attending physician refuses to sign a certificate of death. § 58.720.4, RSMo Cum.Supp.1997. In cases where an autopsy is necessary, a medical examiner shall perform the autopsy if he is a pathologist and file in his office a detailed description of the findings and conclusions of the autopsy. § 58.725. Finally, a medical examiner shall keep full and complete records in his office and promptly deliver to the prosecuting attorney copies of all records relating to every death in which further investigation may be deemed advisable. § 58.740. Because the medical examiner of Buchanan County was an administrative entity created by state statute, he was a public governmental body under the Sunshine Law. *See Charlier v. Corum*, 774 S.W.2d 518, 520 (Mo.App. 1989)(where county sheriff was a public governmental body under the Sunshine Law because sheriff was an administrative entity created by state statute).

The Sunshine Law requires public governmental bodies to make available for inspection and copying by the public that body's public records. § 610.023.2. A public record is "any record, whether written or electronically stored, retained by or of any public governmental body." § 610.010(6). As a public governmental body, the Buchanan County medical examiner's records are generally subject to public disclosure pursuant to the Sunshine Law unless the records are protected from disclosure by law. § 610.021(14).

■ While the medical examiner's statute, Chapter 58, does not place any restrictions on the use or availability of autopsy reports,[2] the investigative reports exception of the Sunshine Law exempted from disclosure the autopsy report of Ms. Sherman. *See Althaus v. Evansville Courier Co.*, 615 N.E.2d 441 (Ind.App.1993)(where coroner may deny the public access to an autopsy report under the Investigatory Records exception to the Indiana Sunshine Law). Section 610.100.2, RSMo Cum.Supp.1997, provides that investigative reports of all law enforcement agencies are closed records until the investigation becomes inactive. An investigative report is "a record, other than an arrest or incident report, prepared by personnel of a law enforcement agency, inquiring into a crime or suspected crime, either in response to an incident report or in response to evidence developed by law enforcement officers in the course of their duties." § 610.100.1(5), RSMo Cum.Supp.1997. For purposes of the investigative report exception to the Sunshine Law, a medical examiner is a law enforcement agency.[3] Chapter 58 requires that a medical examiner be notified when any person dies within the county as a result of violence by homicide. § 58.720.1, RSMo Cum.Supp.1997. Upon receipt of notification, a medical examiner shall take charge of the dead body and fully investigate the

---

**2.** *See* §§ 58.725 and 58.740; *State ex rel. Collins v. Donelson*, 557 S.W.2d 707, 710 n. 2 (Mo.App. 1977).

**3.** The rationale for the investigative report exception to the Sunshine Law is evident. To compel investigators to reveal contents of their investigative reports before the culmination of the investigation and, when appropriate, the prosecution, could result in compromising the investigation

and prosecution by disclosing the status of the investigation, jeopardizing witnesses, aid the guilty in the destruction of yet undiscovered evidence, promote fabricated evidence by a guilty party, and foster other inhibiting consequences. The rationale for nondisclosure before completion of the investigation and prosecution is applicable to the autopsy report.

essential facts concerning the medical causes of death. *Id.* When necessary, an autopsy shall be performed by the medical examiner. § 58.725. Section 58.730 provides that all law enforcement officers shall cooperate fully with the department of the medical examiner. § 58.730. Finally, a medical examiner shall promptly deliver to the prosecuting attorney copies of all records relating to every death in which further investigation may be deemed advisable. § 58.740. Given these duties, a medical examiner is a law enforcement agency for purposes of the investigative reports exception of the Sunshine Law.

▮ In this case, Dr. Cathcart took charge of the dead body of Ms. Sherman, who died as a result of an apparent homicide, and performed an autopsy on the body. Ms. Sherman's death is currently the basis for a criminal prosecution of Eric Weston for second degree murder. The autopsy report prepared by Dr. Cathcart in accordance with his investigation into the cause of death was a record of a medical or scientific investigative procedure of a crime or suspected crime. The medical investigative process was an essential procedure to the criminal investigation to determine such essential facts to the investigation as the cause and time of death, and other pertinent evidence. The report, therefore, was an investigative report prepared by a law enforcement agency.

Although the trial court correctly found the medical examiner to be a public governmental body, it erroneously declared the law in finding that the autopsy report of Ms. Sherman's body was not an investigative report. As an investigative report, the autopsy report was closed until the investigation became inactive and was not subject to public disclosure. The judgment of the trial court, therefore, is reversed, and the cause is remanded to the court with directions to enter an order denying News–Press's Motion for Preliminary Injunction and Mandatory Injunction for Enforcement of the Sunshine Law.

All concur.