In the
 Missouri Court of Appeals
 Western District

 
 GLASGOW SCHOOL DISTRICT, 
 
 Respondent,  WD83990
 v.  OPINION FILED:
 
 HOWARD COUNTY CORONER,  SEPTEMBER 21, 2021
 
 Appellant. 
 
 

 Appeal from the Circuit Court of Howard County, Missouri
 The Honorable Scott Hayes, Judge

 Before Division One: Lisa White Hardwick, Presiding Judge, Alok Ahuja, Judge,
 Anthony Rex Gabbert, Judge

 The Howard County Coroner (“Coroner’s Office”) appeals the judgment of the Howard

County Circuit Court finding that Coroner’s Office violated the Sunshine Law and awarding a civil

fine and attorney’s fees to the plaintiff Glasgow School District (“School District”). In four points

on appeal, Coroner’s Office claims the trial court erred in finding a violation of the Sunshine Law,

finding that the violation was purposeful, and in awarding attorney’s fees. The judgment is

affirmed in part, reversed in part, and remanded.

 Facts

 On December 21, 2016, seventeen year-old K.S. committed suicide. On January 31, 2017,

Coroner’s Office held a coroner’s inquest regarding the death of K.S. Coroner’s Office held the

inquest into K.S.’s death even though it had already determined the physical cause of death for
K.S. and submitted a death certificate for K.S. The purpose of the inquest was to amend K.S.’s

death certificate with the inquest jury’s findings.

 Coroner’s Office heard that K.S. had been bullied at school. The coroner (“Coroner”)

chose to hold the inquest into K.S.’s suicide because he did not want to be responsible for letting

another child die. Coroner hoped that holding the inquest might prevent another child’s death. In

an interview with the television network HBO in 2017, Coroner stated, “this is bullying that’s so

bad that a kind, 17 year old boy, took his life. We need to do something to prevent that from

happening again.”

 The inquest was announced through a news release published in the Fayette Newspaper on

January 10, 2017. Coroner’s Office empaneled six jurors and conducted the inquest in an open

manner before the general public. Numerous members of the community and local media attended

the inquest.

 The inquest was at the sole discretion of Coroner’s Office. Coroner’s Office was involved

with determining which exhibits to present to the jury and the members of the public in attendance.

Coroner’s Office also determined what witnesses to call at the public hearing.

 Coroner’s Office presented all of the information and testimony at the inquest in front of

the viewing public. There was no limiting instruction by anyone as to the use or dissemination of

the evidence or testimony presented at the public inquest. It was transcribed in its entirety. The

inquest concluded that K.S. died from a felony and identified an individual as the perpetrator. It

also concluded School District was negligent. The person identified in the inquest as the

responsible party was charged criminally, and those charges were pending from January 31, 2017

through July 12, 2019.

 2
 On February 2, 2017, School District requested a copy of the inquest transcript from

Coroner’s Office. It hoped to clear its name with respect to the bullying that occurred at school.

On February 17, 2017, Sherry Shives requested a copy of the inquest transcript from Coroner’s

Office. Shives’ son had been identified as one of K.S.’s bullies, and Shives wanted to clear his

name.

 On February 17, 2017, Coroner’s Office called the Attorney General’s Office and inquired

whether the transcript was an open record under the Sunshine Law. Coroner’s Office was advised

it may be an open record and to contact local counsel. On February 21, 2017, Coroner’s Office

spoke with April Wilson, the special prosecuting attorney assigned to K.S.’s case, about whether

the transcript was an open record. Wilson advised she believed it was closed as an investigative

report but would confirm that and let School District know.

 On February 23, 2017, Coroner’s Office provided Shives a copy of the inquest transcript,

free of charge. On February 23, 2017, Coroner’s Office provided K.S.’s family a copy of the

inquest transcript, free of charge.1 Coroner’s Office did not provide a copy of the inquest transcript

to School District on that date.

 On February 24, 2017, School District made another request for the inquest transcript and

exhibits. School District was informed it would have to pay for a copy of the inquest transcript.

Coroner’s Office did not provide a copy of the transcript to School District.

 On February 25, 2017, Wilson told Coroner’s son2 via text message that she believed that,

if Coroner’s Office sent her a copy of the inquest transcript, that it would become investigative

 1
 Section 610.100.4 provides that K.S.’s family may obtain any closed record for purposes of investigation
of any civil claim or defense.
 2
 Wilson testified that she knew Coroner’s son, an attorney, because she had previously worked with him.

 3
and could not be released. On March 2, 2017, Wilson advised School District she believed the

inquest transcript and exhibits were closed. Also on March 2, 2017, Coroner’s Office advised

School District that the inquest transcript and exhibits were closed as investigative records and

would not be provided to School District.

 On March 2, 2017, School District made another request to Coroner’s Office for the inquest

transcript and exhibits. On March 3, 2017, Coroner had his son email a copy of the inquest

transcript to Wilson. Coroner’s Office did not provide the transcript and exhibits to School

District. On March 9, 2017, School District sent correspondence to Coroner’s Officer following

up on the March 2, 2017 request. It attached an Attorney General Opinion Letter3 from 1979 that

stated in relevant part:

 It is our view that the exception specified in §610.025 are not applicable, and that
 the coroner’s jury, constitutes a “public governmental body,” that the coroner’s
 records, unless specifically designated otherwise, are public records and that the
 inquest conducted by the coroner pursuant to Chapter 58 is a “public meeting”
 within the provision of the Sunshine Law. … It is likewise our view that the county
 coroner does not have the authority the refuse to grant access to materials which
 may be presented at an inquest.

After reviewing this letter, Coroner’s Office still chose not to provide a copy of the inquest

transcript or exhibits to School District.

 On March 13, 2017, Coroner’s Office sent a letter to School District’s counsel advising

that the requested records were a part of Wilson’s criminal investigation, were not open records,

and could not be released until Wilson released them. On March 23, 2017, School District filed

the underlying lawsuit requesting access to the inquest transcript and exhibits.

 3
 “An Attorney General's Opinion is not binding on this court.” Smith v. Sheriff, 982 S.W.2d 775, 779 (Mo.
App. E.D. 1998). The 1979 letter predated section 610.100 and relied on a version of section 610.025 which has since
been repealed.

 4
 On June 7, 2017, the television network HBO published a video interview with Coroner.

In the interview, Coroner discussed the inquest matter. Video footage from the inquest was aired.

The contents of the suicide notes4 K.S. left were divulged. Some of the typed pages of the

transcript of the inquest testimony were also shown on screen. Coroner knew his interview would

be published when he gave it.5

 On October 9, 2017, the circuit court entered an order finding that Coroner’s Office had

wrongfully denied access to the inquest transcript and exhibits. 6 Coroner’s Office did not provide

a copy of the inquest transcript to School District until November 1, 2017.

 At a November 1, 2017 hearing regarding this matter, the circuit court judge told the

Coroner that he was to exercise good faith to get with the sheriff’s department to get School District

the remaining inquest exhibits. Coroner did not reach out to the sheriff’s department but instead

directed his attorney to write a letter to the sheriff’s department. In the letter dated November 2,

2017, Coroner wrote to School District that the exhibits were documents generated by the sheriff’s

department and are the property of the sheriff’s department. The letter ended: “The Howard

County Coroner’s office is willing to provide copies of these exhibits to the Glasgow School

District only if the Sheriff’s department consents to their release, and provides copies of these

documents to the Coroner’s office.” The letter did not mention the court’s directive.

 4
 K.S. left multiple suicide notes.
 5
 Coroner testified that he did not provide HBO with the transcript or access to K.S.’s suicide notes.
 6
 Coroner’s Office appealed the interlocutory order to this court on October 11, 2017. Coroner’s Office filed
a writ of prohibition with this court on October 25, 2017. That writ was denied on October 27, 2017. We later
dismissed the appeal for lack of an appealable judgment. Glasgow Sch. Dist. v. Howard County Coroner, 572 S.W.3d
543 (Mo. App. W.D. 2019).

 5
 School District’s counsel advised Coroner’s Office that the letter sent to the sheriff’s

department did not comply with the court’s directive that Coroner’s Office exercise good faith to

help School District get the inquest exhibits. Coroner’s Office advised School District that if it

wished to obtain the inquest exhibits then it should subpoena them. School District subsequently

subpoenaed the exhibits.

 A bench trial was held in January 2020. The court held that Coroner’s Office is not a “law

enforcement agency” under section 610.100.1(5). Coroner’s Office is a Missouri public

governmental body under the Sunshine Law, Chapter 610. The court determined that Coroner’s

Office wrongfully and repeatedly denied access to open public records requested by School

District in violation of the Sunshine Law. The violations were purposeful, occurred on multiple

occasions, and were a serious offense. The court ordered Coroner’s Office to pay a civil penalty

of $500.

 The court also awarded School District its attorney’s fees. The court found that School

District incurred a total of $73,259.50 in attorney and paralegal fees to obtain the inquest transcript

and exhibits. The court further found that the $73,259.50 did not encompass all of School

District’s fees but only those incurred as a direct result of Coroner’s Office refusing to provide the

transcript and exhibits.

 This appeal follows.

 Standard of Review

 “We review a bench-tried case under the standard provided by Murphy v. Carron, 536

S.W.2d 30, 32 (Mo. banc 1976).” Cox v. City of Chillicothe, 575 S.W.3d 253, 256 (Mo. App. W.D.

2019). “This Court will affirm the judgment of the trial court unless there is no substantial

evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies

 6
the law.” Id. (internal quotation marks omitted). We accept “all evidence and inferences therefrom

in the light most favorable to the prevailing party and disregarding all contrary evidence.” Id.

(internal quotation marks omitted). We defer “to the trial court on factual issues because it is in a

better position not only to judge the credibility of witnesses and the persons directly, but also their

sincerity and character and other trial intangibles which may not be completely revealed by the

record.” Id. (internal quotation marks omitted).

 The Sunshine Law, found in Chapter 610, 7 establishes Missouri’s public policy that

meetings and records of public governmental bodies are open to the public unless otherwise

provided by law. §610.011.1. “The scope of the application of section 610.010 to section 610.200

shall be liberally construed and their exceptions strictly construed to promote the public policy

of open records.” Cox, 575 S.W.3d at 256 (internal quotation marks omitted). “[W]here … the

issue is whether a penalty and attorney’s fees should be imposed, the portions of

the Sunshine Law that allow for imposition of a civil penalty and an award of attorney fees and

costs are penal in nature and must be strictly construed.” Id. (internal quotation marks omitted).

“Whether the conduct of the [defendant] brings it within the scope of the statutory definitions of

knowing or purposeful conduct is a question of fact.” Id. (internal quotation marks omitted).

“Under that standard, it [is] up to the trial court, as fact finder, to determine whether the … conduct

was knowing or purposeful as those terms are used in section 610.027....” Id. at 256-57 (internal

quotation marks omitted).

 Point I

 7
 All statutory references are to RSMo 2016 as supplemented through 2017 unless otherwise indicated.

 7
 In its first point on appeal, Coroner’s Office claims the trial court erred as a matter of law

in granting judgment in favor of School District. It argues the requested reports are closed

documents under the Sunshine Law. Coroner’s Office states that it is a law enforcement agency,

and the documents are investigative reports pursuant to section 610.100.2.

 Pursuant to section 610.100.2(2), “investigative reports of all law enforcement agencies

are closed records until the investigation becomes inactive.” An “investigative report” is defined

as “a record, other than an arrest or incident report, prepared by personnel of a law enforcement

agency, inquiring into a crime or suspected crime, either in response to an incident report or in

response to evidence developed by law enforcement officers in the course of their duties.”

§610.100.1(5). Section 610.010.1(1) provides that a “closed meeting,” “closed record,” or “closed

vote” is defined as “any meeting, record or vote closed to the public.”

 In News-Press and Gaz. Co. v. Cathcart, 974 S.W.2d 576 (Mo. App. W.D. 1998), a

newspaper sought an autopsy report from the county medical examiner. Id. at 577. The trial court

ordered the medical examiner to make the autopsy report available under the Sunshine Law. Id.

at 577-78. This court reversed the trial court’s judgment. Id. at 578.

 This court found that the medical examiner is a governmental entity created by statute. Id.

at 578-79 (citing §610.010(4)). As such, the medical examiner must make its public records

available unless the records are protected from disclosure by law. Id. at 579 (citing §§610.010(6)

and 610.021(14)). This court held that the autopsy report was an investigative report that was a

closed record until the investigation is inactive. Id. (citing §610.100.2 and Althaus v. Evansville

Courier Co., 615 N.E.2d 441 (Ind. App. 1993) (where coroner may deny the public access to an

autopsy report under the Investigatory Records exception to the Indiana Sunshine Law)). “Given

[its] duties, a medical examiner is a law enforcement agency for purposes of the investigative

 8
reports exception of the Sunshine Law.” Id. at 580. Those duties include taking charge of dead

bodies, fully investigating essential facts concerning medical causes of death, performing

autopsies, receiving cooperation from law enforcement officers, and delivering records to the

prosecuting attorney. Id. at 579.

 This court went on to analyze the nature of the autopsy report at issue. The medical

examiner took charge of the body of the victim who died as a result of an apparent homicide. Id.

at 580. The victim’s death was the basis for a criminal prosecution against a defendant charged

with second degree murder. Id. “The autopsy report prepared by [the medical examiner] in

accordance with his investigation into the cause of death was a record of a medical or scientific

investigative procedure of a crime or suspected crime.” Id. “The medical investigative process

was an essential procedure to the criminal investigation to determine such essential facts to the

investigation as the cause and time of death, and other pertinent evidence.” Id. “The report,

therefore, was an investigative report prepared by a law enforcement agency.” Id. As such, the

autopsy report would be closed and not subject to public disclosure until the investigation became

inactive. Id.

 The current case involves a coroner and a coroner’s inquest instead of a medical examiner

and an autopsy report. A coroner is a governmental entity created by statute. The statutes

pertaining to coroners are found in Title VI of the Revised Statutes of Missouri which is titled

“County, Township and Political Subdivision Government.” A coroner is a “conservator of the

peace throughout his county.” §58.180. Sheriffs are also conservators of the peace. §57.110.8

Unlike a sheriff, however, a coroner is not required to have a valid peace officer license. §57.010.

 8
 Other conservators of the peace include municipal judges and the governor of the State of Missouri.
§479.070; Mo. Const. art. IV, §2.

 9
The coroner performs the duties of the sheriff when the sheriff cannot do so. §§58.190; 58.200.

If the coroner is absent for any reason, the sheriff performs the coroner’s duties. §58.205.

 Section 58.451.1 provides:

 When any person, in any county in which a coroner is required by section 58.010,
 dies and there is reasonable ground to believe that such person died as a result of:
 (1) Violence by homicide, suicide, or accident;
 …
 the police, sheriff, law enforcement officer or official, or any person having
 knowledge of such a death shall immediately notify the coroner of the known facts
 concerning the time, place, manner and circumstances of the death. Immediately
 upon receipt of notification, the coroner or deputy coroner shall take charge of the
 dead body and fully investigate the essential facts concerning the medical causes of
 death, including whether by the act of man, and the manner of death. The coroner
 or deputy coroner may take the names and addresses of witnesses to the death and
 shall file this information in the coroner's office. The coroner or deputy coroner
 shall take possession of all property of value found on the body, making exact
 inventory of such property on the report and shall direct the return of such property
 to the person entitled to its custody or possession. The coroner or deputy coroner
 shall take possession of any object or article which, in the coroner’s or the deputy
 coroner's opinion, may be useful in establishing the cause of death, and deliver it to
 the prosecuting attorney of the county.

The coroner is not required to have a medical license. §58.030. The coroner may make or cause

an autopsy to be performed, and the corner may employ the services of a pathologist or other expert

to aid in the examination of the body. §58.451.7.

 From the above statutory framework, like the medical examiner at issue in Cathcart, a

coroner’s office may at times function as a law enforcement agency. We need not, however,

resolve this question because, even assuming that a coroner’s office functions as a law enforcement

agency when it conducts an inquest, the transcript of a public inquest is not an “investigative

report” within the meaning of §610.100.2. Section 58.260 states:

 Every coroner, having been notified of the dead body of any person, supposed to
 have come to his or her death by violence or casualty, being found within his county,
 may make out his or her warrant, directed to the sheriff of the county where the
 dead body is found, requiring him or her forthwith to summon a jury of six good

 10
 and lawful citizens of the county, to appear before such coroner, at the time and
 place in his or her warrant expressed, and to inquire how and by whom he or she
 came to his or her death.

The coroner administers an oath or affirmation to the jurors and the witnesses. §§58.300; 58.340.

 As soon as the jury shall be sworn, the coroner shall give them a charge, upon their
 oaths, to declare of the death of the person, whether he or she died by felony or
 accident; and if of felony, who were the principals and who were accessories, and
 if the act was justified, and all the material circumstances relating thereto; and if by
 accident, whether by the act of man, and the manner thereof, and who was present,
 and who was the finder of the body, and whether he or she was killed in the same
 place where the body was found, and, if elsewhere, by whom, and how the body
 was brought there, and all other circumstances relating to the death; and if he or she
 died of his or her own act, then the manner and means thereof, and the
 circumstances relating thereto.

§58.310. “Every coroner shall be empowered to issue his or her summons for witnesses, and such

evidence, documents, and materials of substance, commanding them to come before him or her to

be examined, and to declare their knowledge concerning the matter in question.” §58.330. “The

evidence of such witnesses shall be taken down in writing and subscribed by them…” §58.350.

The jury draws up and delivers to the coroner their verdict which is signed by the coroner. §58.360.

If the inquest determines the death is by the felony of another, the coroner must inform the judge

or justice of the proper county. §58.370.

 In the context of a coroner’s inquest, the coroner is acting in an almost judicial capacity.

See, e.g., Patrick v. Employers Mut. Liab. Ins. Co., 118 S.W.2d 116, 123 (Mo. App. 1938) (“In

this state a coroner acts judicially in respect to determining whether an inquest shall be held.”).

The coroner coordinates the presentation of relevant evidence so that a jury can make

determinations regarding cause of death and possible culpability.

 11
 Our conclusion that the inquest transcript is not an “investigative report” is consistent with

the purpose behind the investigative report exception. “The rationale for the investigative report

exception to the Sunshine Law is evident.” News-Press and Gaz. Co., 974 S.W.2d at 579 n.3.

 To compel investigators to reveal contents of their investigative reports before the
 culmination of the investigation and, when appropriate, the prosecution, could
 result in compromising the investigation and prosecution by disclosing the status
 of the investigation, jeopardizing witnesses, aid the guilty in the destruction of yet
 undiscovered evidence, promote fabricated evidence by a guilty party, and foster
 other inhibiting consequences.

Id.

 In the current case, Coroner advertised the inquest in the newspaper. See §610.020

(discussing the notice requirement for open meetings). The inquest was open to the public,

including members of the press. Coroner spoke about the inquest to a television network. A copy

of the transcript was given to a party who, like School District, wanted to use it to clear the name

of an implicated party. The inquest itself was open and not closed. Compare Smith v. Sheriff, 982

S.W.2d 775, 780 (Mo. App. E.D. 1998) (finding that minutes of a closed meeting are also closed).

A determination that the transcript of this public event is also public does not jeopardize any

potential investigation and prosecution. Contrast News-Press and Gaz. Co., 974 S.W.2d at 579

n.3. (“The rationale for nondisclosure before completion of the investigation and prosecution is

applicable to [an] autopsy report” which was not otherwise available to the public).

 There were several exhibits presented at the inquest. Those exhibits included pictures of

the deceased, a police report, K.S.’s suicide notes, phone records, and a Facebook page. The record

indicates that Coroner was the custodian of the pictures of K.S. after his death. School District

initially requested all exhibits from the coroner’s inquest. It later clarified that it was not seeking

to obtain the pictures of K.S. after his death. Instead, School District sought to obtain the exhibits

 12
that were generated by or obtained by the sheriff’s department. Those exhibits were brought to

the inquest by the sheriff’s department and then retained by the sheriff’s department after the

inquest ended.9

 When the parties appeared in court on November 1, 2017, Coroner indicated he was willing

to give the transcript of the inquest to School District in an effort to end the litigation. Coroner’s

counsel informed the court that Coroner could not disclose the requested exhibits because Coroner

did not have possession of them and was not the custodian of them. Coroner’s counsel stated that

Coroner asked the sheriff’s department for a copy of the exhibits, and the sheriff’s department

refused to turn the exhibits over to Coroner. The sheriff was present in court and stated the

following:

 Okay. Well, if the Court orders me, I’ll give them anything you want me to give to
 them. But the problem that we’re having is because there is an active, ongoing
 criminal case at this moment. And the way it’s always been, that if we have an
 active ongoing criminal case, it’s an active case, we give that information to the
 prosecutor’s office. And whoever the prosecutor may be, whether it’s our
 permanent prosecutor, or whether is a special prosecutor, whoever, they maintain
 control and allow me to not give out official records unless it goes through them.
 And that’s according to the 210 statute.

Coroner’s counsel stated that the sheriff’s department should have been brought into the case

because School District was seeking records from the sheriff’s department. The court stated:

 You, [School District’s counsel], as well as trying to get with the Sheriff’s
 Department to get the remaining exhibits, I know that you say that the Coroner has
 to give them. The Coroner with assist you in getting them, in cooperation through
 whomever. These were exhibits you used to affect a lot of people’s lives, and to
 say all of a sudden now you can’t help them get these. I think you can. These were
 done in open court, in this courtroom in open proceedings. And everybody’s
 entitled to the knowledge. … Somebody will probably need to subpoena - I’m not
 going to tell you who to subpoena, I’m sorry, but subpoena those involved, that
 would maybe indicate whether this is purposefully or not, and obstructive.

 9
 Nothing in the record suggests, and no party argues, that Coroner allowed the sheriff’s department to
retain the exhibits after the inquest in an effort to keep the exhibits from School District.

 13
Coroner’s Office subsequently advised School District that if it wished to obtain the inquest

exhibits then it should subpoena them. School District subpoenaed the exhibits.

 Coroner’s Office does not argue on appeal that any of the exhibits are individually closed

under the Sunshine Law. Instead, Coroner argues that the sheriff’s department is the custodian of

a number of the exhibits, and Coroner cannot disclose them. “[A] public agency’s custodian of

records is responsible for a request for that agency's records.” State ex rel. Daly v. Info. Tech.

Services Agency of City of St. Louis, 417 S.W.3d 804, 809 (Mo. App. E.D. 2013) (emphasis in

original). Section 610.027 “demonstrates the legislature's clear intent that the custodian of

records for the agency whose records are sought has the responsibility of the dissemination or non-

dissemination of those records.” Id. (emphasis in original). “We recognize that … a government

agency may transmit its record to another governmental entity and a Sunshine Law request may

be properly addressed to the governmental entity that received the record.” Id. at 810.

“Governmental agencies often communicate with each other and we acknowledge that a document

could be held as a record of more than one governmental agency.” Id. “But in those circumstances,

the agency that transmitted the record surrendered its sole custody of the record and the receiving

entity retained it.” Id.

 It is undisputed in this case that the exhibits at issue were generated by or obtained by the

sheriff’s department. They were also retained by the sheriff’s department. While Coroner

organized the inquest and determined what evidence would be presented, nothing suggests that the

sheriff’s department surrendered custody of the exhibits to Coroner. The trial court appears to

have also recognized this. Instead of ordering Coroner to disclose those exhibits, the trial court

 14
ordered Coroner to work with the sheriff’s department to get the exhibits in the sheriff’s

department’s custody disclosed.

 The issue before us is not whether the exhibits are closed under the Sunshine Law. Nor is

the issue whether the sheriff’s department should have disclosed them. Instead, this court is tasked

with determining whether Coroner’s Office violated the Sunshine Law when it did not disclose the

records not in its custody. We find that it did not.

 The bulk of the trial court’s judgment addresses the transcript of the coroner’s inquest.

Coroner’s point relied on arguing that the trial court erred in finding the transcript was an open

record is denied. The judgment states that Coroner’s Office repeatedly and wrongfully denied

School District access to “open public records.” To the extent that the trial court’s judgment found

that Coroner’s Office wrongfully denied access to the exhibits in the possession of the sheriff’s

department, the judgment is reversed.

 Point II

 In its second point on appeal, Coroner’s Office claims the trial court erred in finding that it

purposefully violated the Sunshine Law and, accordingly, imposing a civil fine and awarding

School District attorney’s fees. It argues that substantial evidence did not support a finding of a

purposeful violation. Coroner’s Office states the evidence did not show it violated the Sunshine

Law with a conscious design, intent, or plan to violate the law. It also maintains it did not violate

the Sunshine Law with an awareness of the probable consequences.

 “A trial court’s judgment is not supported by substantial evidence when there is no

evidence in the record tending to prove a fact that is necessary to sustain the circuit court's

judgment as a matter of law.” Laut v. City of Arnold, 491 S.W.3d 191, 197 (Mo. banc 2016)

(internal quotation marks omitted). “When reviewing whether the circuit court’s judgment is

 15
supported by substantial evidence, appellate courts view the evidence in the light most favorable

to the circuit court’s judgment and defer to the circuit court's credibility determinations.” Id.

(internal quotation marks omitted). “[N]o contrary evidence need be considered on a substantial-

evidence challenge ... [and] [c]ircuit courts are free to believe any, all, or none of the evidence

presented at trial.” Id. (internal quotation marks omitted). “When the evidence supports two

reasonable but different inferences, this Court is obligated to defer to the circuit court's assessment

of the evidence.” Id. at 202 (internal quotation marks omitted).

 Section 610.027.4 provides in relevant part, “If the court finds that there was a purposeful

violation of sections 610.010 to 610.026, then the court shall order the payment by such body or

member of all costs and reasonable attorney fees to any party successfully establishing such a

violation.” “[A] purposeful violation occurs when the party acts with a conscious design, intent,

or plan to violate the law and [did] so with awareness of the probable consequences.” Laut, 491

S.W.3d at 198. (internal quotation marks omitted). “[T]his is a far greater burden than required to

prove a knowing violation, for to prove a purposeful violation the plaintiff must prove more than

mere intent to engage in the conduct resulting in the violation[.]” Id. at 199 (internal quotation

marks omitted). “Plaintiff must show that the conscious plan or scheme, the purpose of the

conduct, was to violate the law.” Id. “A purposeful violation involves proof of intent to defy the

law or achieve further some purpose by violating the law.” Id. at 200.

 As an initial matter, Coroner knew the penalties for violating the Sunshine Law. Coroner

had served as the coroner for over 28 years. He received training on the Sunshine Law and its

obligations. Coroner retained reference materials from that training. He testified that, when trying

to determine whether the requested records were open or closed, he did not review those reference

materials.

 16
 We note that Coroner had determined K.S.’s cause of death and submitted a death

certificate prior to calling for a coroner’s inquest. He heard about bullying and held the inquest to

investigate those rumors. Coroner determined and presented evidence to the effect that School

District along with others was a negligent party with respect to K.S.’s death.

 The timing of events is important in this case. On February 2, 2017, School District

requested a copy of the inquest transcript. On February 17, 2017, Shives requested a copy of the

inquest transcript. On February 17, 2017, Coroner’s Office called the Attorney General's office

regarding whether the inquest transcript was an open record that required disclosure under the

Sunshine Law and was advised it may be an open record and to contact local counsel. On February

21, 2017, Coroner’s Office spoke with appointed special prosecutor Wilson regarding whether the

transcript was an open record and she advised she believed it might be closed as an investigative

report and would confirm and get back to him. On February 23, 2017, Coroner’s Office provided

a transcript to Shives free of charge. On February 24, 2017, School District made another request

for the transcript and exhibits. It was informed it would have to pay for the records. On March 2,

2017, Wilson advised Coroner she considered the records to be closed. At the time Coroner was

maintaining the inquest transcript was a closed record, an interview with Coroner was aired on a

major television network. During that interview, Coroner spoke about the inquest. On October 9,

2017, the trial court entered an order finding School District violated the Sunshine Law and

ordering Coroner to disclose the records. Coroner appealed the order and sought a writ of

prohibition. On November 1, 2017, after the writ was denied but before the appeal was

adjudicated, Coroner’s Office provided School District with the inquest transcript.

 Both Shives’ son and School District were identified during the inquest as parties who

contributed to K.S.’s suicide. Both Shives and School District sought the inquest records to clear

 17
their reputations. Both Shives and School District requested the transcript prior to February 23,

2017. Yet only Shives received the transcript on February 23, 2017. While Shives received a free

transcript, School District was later informed it would have to pay for the transcript after its second

request. Before School District could pay for a transcript, it was informed the records were closed

and unavailable.

 Text messages between Coroner’s son and Wilson indicate Coroner was seeking a way to

prevent School District from receiving the transcript. Coroner’s son texted the following to

Wilson:

 I meant to tell you. Dad told me today that Mickus10 called and demanded a copy
 of the transcript and copies of the suicide notes.
 …
 I think Dad’s plan was to tell him that under Sunshine Law, he requires payment in
 advance for transcript, and if he does pay, it takes 10 days to clear bank before
 copies are released… Of course, transcript only; no letters. Those are definitely not
 public records.

Wilson replied on Saturday, February 25, 2017:

 I have never gotten my copy I requested or disclosed it to Jeff11 … I thnk if he wld
 send to me it becomes investigative & cannot be released. I have been saying

 That for a couple weeks:)

(Spelling and spacing as in original).

 On March 9, 2017, School District provided Coroner with a 1979 Attorney General

Opinion Letter opining that the inquest is an open meeting. Coroner testified that he did not share

that letter with Wilson. He testified that he disregarded the letter because “[t]he attorney for the

 10
 Thomas Mickes was counsel for School District.
 11
 Jeff Hilbrenner was the defense attorney representing the person charged in connection with K.S.’s death.

 18
other side would tell me whatever they want.” This occurred before School District filed a lawsuit

against Coroner’s Office.

 Section 610.027.6 provides a public governmental body with a safe harbor when it is “in

doubt about the legality of closing a particular ... record,” and among other things, authorizes the

public governmental body to “seek a formal opinion of the attorney general or an attorney for the

governmental body.” Coroner did not seek a formal opinion.

 All of this supports the finding that Coroner’s Office acted with a conscious design, intent,

or plan to violate the law. The finding that Coroner’s Office purposefully violated the Sunshine

Law is supported by substantial evidence. See also Spradlin v. City of Fulton, 982 S.W.2d 255,

263 (Mo. banc 1998) (“Hereafter, however, members of governmental bodies are on notice that

the provisions of the open meetings law will be strictly enforced and that our trial courts will have

less latitude to avoid a finding of a purposeful violation.”).

 The point is denied.

 Point III

 In its third point on appeal, Coroner’s Office claims the trial court erred in finding that it

purposefully violated the Sunshine Law and, accordingly, imposing a civil fine and awarding

School District attorney’s fees. It argues that the judgment finding that Coroner’s Office

purposefully violated the Sunshine Law was against the weight of the evidence. Coroner’s Office

maintains that, when viewed in its entirety, the evidence did not show that it violated the Sunshine

Law with a conscious design, intent, or plan to violate the law or that it violated the Sunshine Law

with an awareness of the probable consequences.

 “A claim that the judgment is against the weight of the evidence presupposes that there is

sufficient evidence to support the judgment.” Laut, 491 S.W.3d at 197 (internal quotation marks

 19
omitted). “[A] trial court’s judgment is against the weight of the evidence only if the circuit court

could not have reasonably found, from the record at trial, the existence of a fact that is necessary

to sustain the judgment.” Id. (internal quotation marks omitted). “The power to set aside a trial

court’s judgment on the ground that it is against the weight of the evidence should be exercised

with caution and with a firm belief that the decree or judgment is wrong.” Spradlin, 982 S.W.2d

at 263 (internal quotation marks omitted). “While we may have weighed the evidence differently

and arrived at a different conclusion than the trial court, we must adhere to our standard of review

and are not free to substitute our own judgment for that of the trial court.” Id.

 Coroner argues he examined the Sunshine Law, discussed the matter with the special

prosecutor Wilson, and contacted the Attorney General’s Office. Coroner states that Shives

received a transcript because she appeared in person and received a quarter page 12 version of the

transcript. In contrast, School District requested the transcript be mailed to a specific address.

Coroner also assumed that School District would want a full page version of the transcript.

Coroner claims he did not have an improper motive in calling the inquest. He also states that he

uniformly treated the records as closed after being told by Wilson that they should not be disclosed.

Coroner further notes he relied on Wilson’s opinion that the records were closed. Finally, Coroner

claims he always thought Coroner’s Office was a law enforcement agency and, thus, could close

the records as investigative reports independent of emailing the transcript to Wilson.

 As discussed in Point II, a finding that Coroner’s Office purposefully violated the Sunshine

Law is supported by sufficient evidence. The evidence and arguments made by Coroner in this

point do not render that finding against the weight of the evidence.

 12
 This refers to four pages of the transcript appearing on one full page, each taking up a quarter of the page.

 20
 The point is denied.

 Point IV

 In its fourth point on appeal, Coroner’s Office claims the trial court erred in awarding

$75,259.50 in attorney’s fees to School District. It argues that substantial evidence did not support

the award. Coroner’s Office maintains that the affidavit submitted by School District includes

amounts of no value for School District. It also states that these amounts were used in obtaining

records of which Coroner’s Office was not the custodian, and should not have been included.

 Section 610.027 provides that the court may award costs and reasonable attorney’s fees to

a party who establishes a knowing or purposeful violation of the Sunshine Law. “We will not

disturb a trial court’s decision to award attorneys’ fees absent an abuse of discretion.” Wyrick v.

Henry, 592 S.W.3d 47, 65 (Mo. App. W. Dist. 2019). “A court abuses its discretion when it awards

an amount so arbitrarily arrived at, or so unreasonable, as to indicate indifference and a lack of

proper consideration.” Id. (internal quotation marks omitted).

 School District’s counsel submitted sets of itemized bills for its services. The first set

totaled $73,259.50 while the second set totaled $53,294.50. The $73,259.50 represented the cost

of obtaining the inquest transcript and exhibits from Coroner’s Office while the $53,294.50

represented the cost of obtaining the inquest transcript alone from Coroner’s Office.

 On appeal, Coroner’s Officer argues that it was not the custodian for the exhibits and did

not maintain them. It states that the exhibits were in the possession of Wilson and the sheriff’s

department. Coroner’s Office claims that the additional $20,000 includes the cost to subpoena and

obtain the exhibits from Wilson and the sheriff’s department. It concludes that the matter should

be remanded for a determination of attorney’s fees with respect to exhibits Coroner’s Office was

the custodian of or maintained.

 21
 We agree. According to the billing statements, the $73,259.50 included amounts to

subpoena records from Wilson and the sheriff’s department. It also included amounts to prepare

notices of deposition duces tecum for Wilson and the sheriff’s department. That amount further

includes costs relating to service on the custodian of records for Wilson and the sheriff’s

department. It is an abuse of discretion for the trial court to order Coroner’s Office to pay

attorney’s fees incurred from School District’s attempts to obtain documents from other

governmental entities.

 The point is granted. The matter is remanded for the trial court to award attorney’s fees

for the time School District spent obtaining records from Coroner’s Office only.13

 Conclusion

 The judgment is affirmed in part, reversed in part, and remanded. The judgment is affirmed

with respect to Point I except to the extent it found Coroner’s Office violated the Sunshine Law in

not disclosing exhibits not in its custody. The judgment is also affirmed with respect to Points II,

and III. The issue of attorney’s fees as raised in Point IV and the motion filed with this court, is

remanded for a determination of the fees consistent with this opinion.

 Anthony Rex Gabbert, Judge

All concur.

13
 School District filed a motion with this court for appellate attorney’s fees. Section 610.027.4 authorizes a court to
award, “all costs and reasonable attorney fees to any party successfully establishing” a purposeful violation of
the Sunshine Law. We grant that motion because School District successfully defended the judgment finding that the
inquest transcript, and the exhibits in Coroner’s possession, are open records, and that Coroner’s Office purposefully
withheld them. “Although appellate courts have authority to allow and fix the amount of attorney’s fees on appeal,
we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence
and argument on this issue and determine the reasonableness of the fee requested.” Turner v. Kansas City Pub. Sch.,
488 S.W.3d 719, 726 (Mo. App. W.D. 2016) (internal quotation marks omitted). Accordingly, we remand to the trial
court to determine the reasonableness of School District’s attorney fees on appeal and enter an appropriate award.

 22